Vilas & Platt *v.* Burton et als.

------

SAMUEL F. VILAS AND MOSS K. PLATT *v.* OSCAR A. BURTON, JOHN D. CAMPBELL, DAVID A. SMALLEY, LAVATER WHITE, AND ELIJAH ROOT.

[IN CHANCERY.]

*Appeal.   Contempt.*

No appeal lies from the final order of the court of chancery upon proceedings for contempt in disobeying an injunction of that court.

*Semble.*  Proceedings for contempt, where the proceedings are not so irregular as to be against law, and give the court no proper jurisdiction, are not ordinarily revisable in a superior court.

APPEAL from an order of the court of chancery.  An injunction was granted by the court of chancery, on the application of the complainants, enjoining the Rutland & Burlington Railroad Company, the Champlain Transportation Company, Henry R. Campbell, Oscar A. Burton, Lavater White, and Elijah Root, and their attor-

neys, agents, and servants, from interfering with the steamer Francis Saltus, and from disturbing the complainants in their possession and use of said boat.

The complainants, by their petition to the said court of chancery, represented that the defendants, a part of whom were defendants in the original suit, the others being charged as their agents or confederates, had disregarded and violated said injunction; and moved that an attachment might issue against them for their contempt in so disregarding it. Upon a hearing, May 10, 1854, the defendants were found guilty of the alleged contempt and were ordered, among other things, to pay to the complainants a sum equal to the damages sustained by them, by reason of the breach of said injunction, together with the costs of that proceeding, to be ascertained by a reference to a master.

Upon the coming in of the master's report, on the 6th September, 1854, the said court of chancery made a further order that the defendants pay the damages and costs so ascertained within sixty days, and, in default thereof, stand committed until the order be complied with.

From these orders the defendants appealed to the supreme court, in which court a motion was made to dismiss the appeal.

*Underwood & Hard* and *Geo. F. Edmunds* in support of the motion.

No appeal lies except by force of the statute.

The statute (Comp. Stat. p. 217 § 79) provides that a party may appeal from a *final order* or *decree*, by motion. The following sections show that this applies to causes *inter partes* pending in chancery, as it provides for the removal of the case, bill, answer, &c.

A *final order* or *decree*, in the sense of the statute, must be a final disposition of the *cause*, and not the final decision of the court upon an incidental or interlocutory question. *Haswell* v. *Vt. C. R. Co.*, 23 Vt. 228. 2 Vol. U. S. Statutes at Large, p. 244. *Brown* v. *Swann*, 9 Pet. 1. *Lea* v. *Kelly*, 15 Pet. 213. *Young* v. *Smith*, 15 Pet. 287. *Gibbons* v. *Ogden*, 6 Wheat. 448. *Buel* v. *Street*, 9 Johns. 443. *Jenkins* v. *Wilde*, 14 Wend. 539.

No appeal lies (except by express statute) from any order of the court of chancery in a matter of contempt. It is the exercise of

an incidental power inherent in the court, and necessary for the preservation of order and for its own protection, and is not a subject of litigation *inter partes,* as such. *Kearney ex parte,* 5 U. S. Cond. 225. 4 U. S. Dig. 410, 411. I U. S. Dig. No. 104.

———————————— against the motion.

This is a distinct and independant proceeding from the original suit; it begins by motion or petition, and proceeds to a final determination, without any connection with or reference to the proceedings in the original suit. *Langdon ex parte,* 25 Vt. 680. *McCredie* v. *Senior,* 4 Paige 378.

A part of the defendants in this proceeding are not parties to the original suit, and, therefore, cannot bring up the questions involved in this proceeding by an appeal from the final decree in the original suit, to which they are not parties. *Reid* v. *Vanderheyden,* 5 Cow. 519, 533. *Mills* v. *Hoag,* 7 Paige 21.

This was a final decree as to all the defendants in this proceeding,— the court of chancery had exhausted its power, come to a finality. Adams Eq. 685. *Mills* v. *Hoag,* 7 Paige 18, 19.

The opinion of the court was delivered by

REDFIELD, CH. J., The only question made in the present case upon this motion to dismiss the appeal, is whether a final decree of the court of chancery, in proceedings taken against parties to the suit, and others confederated with them, for contempt, in disobeying an injunction of that court, is removable into this court by appeal.

I. It is certainly competent for the legislature to allow an appeal in cases like the present, and in the state of New York, they have done so, in terms. Decisions in that state, therefore, showing that decrees of the court of chancery are subject to appeal, and revision, in their court of appeals, can signify nothing here, inasmuch as the right of appeal there extends to all decrees of the court of chancery, interlocutory as well as final, and decrees in cases of contempt are expressly named in the statute. So, too, in the English practice, 3 Daniels Ch. Pr. 1633, 1634, it is allowable for the party to appeal from interlocutory as well as final decrees; but in this state, the rule in regard to appeals from the decree of the court of chancery, is different. The statute in terms, limits it to the final

decree "in the cause," which can only be made "at the regular term of the court," and must be taken at the same term at which the decree is made. We can, therefore, obtain very little assistance in determining this question, from the decisions in England or New York, on account of the very marked difference in the statutes and practice governing the courts of chancery, in those countries, and our own.

II. Judging from the statute of this state, allowing appeals from the court of chancery to this court, it seems to us very certain, that an appeal will not lie from the decree of the chancellor in matter of contempt. Proceedings in contempt are twofold; first, before the suit is ended, to bring it to final hearing and determination. Of this character are proceedings in the English chancery, to compel appearance, answer, and other proceedings in the case, preliminary to the final hearing. In our practice these things are got along with, by taking the bill confessed, for want of proceeding on the part of the defendant, and, on the other hand, abandoned for want of prosecution, according to the standing rules of court. But the proceeding for contempt, in disobeying a temporary injunction, is much the same in the English courts as here, by attachment and sequestration. But the decree in the matter of contempt does not become final in the case, but is ordinarily only for the purpose of maintaining the subject-matter of the controversy in its present state, to enable the court to award specific justice upon the final hearing. And it is obvious, these decrees, to be of any avail, must be able to be taken promptly, upon the violation of the injunction of the court, in vacation as well as term time, and that a final decree in the matter of contempt, and an order of execution, will occur in vacation,— perhaps more commonly in vacation than in term time. To be available, speedy action is indispensable often in such cases; and it is one of those incidental collateral matters, which, ordinarily, certainly, are not regarded as revisable in any other court, but matter of pure discretion in the court of chancery. It is certain such a decree is not what is ordinarily understood by a "final decree in the cause," which, according to our practice, is required to be made in term time.

There is a large and important class of proceedings for contempt in the courts of chancery, which are not regarded as a pending

litigation, but are merely for the purpose of carrying into effect a final order or decree of the court. And I am not aware that it was ever supposed in such proceedings, that an execution of a decree of punishment for contempt, in hindering or obstructing the process of the court, was liable to be arrested by an appeal. Such a proceeding would certainly present an anomaly. Still, a decree of that kind is sufficiently final. But I apprehend there is no necessity it should be made in term time, and that it is not a decree of that character which the legislature intended to make appealable; for if brought into this court by appeal, we could only determine the regularity of the proceedings, and then remand the decree to be carried into effect in the court of chancery, in the prescribed mode, as this court have now no chancery powers. We entertain no doubt, that any decree of the court of chancery, in proceedings for contempt, whether before or after the final decree — whether to enforce a temporary or perpetual injunction, is not appealable to this court.

In addition to the suggestions already made, we may indicate the following, as tending to confirm the views taken.

1. The English courts have always held, that proceedings for contempt in one court, where the court has jurisdiction of the subject-matter and of the parties, are not revisable in any other court. This is especially true of the superior courts in Westminster Hall and the two houses of Parliament. *Lord Mayor of London's case,* 3 Wilson, 188; opinion of Ch. J. De Grey, 198. The elaborate opinion of Kent, Ch. J., in *Yates' case,* 4 Johns. 353, and those of the other judges in the same case, and in *Yates* v. *the People,* 6 Johns. 338, 522. This last case, first and last, in different forms, (see *Yates* v. *Lansing,* 5 Johns. 282, and 9 Johns. 395,) occupied the attention of the supreme court of New York, and their court of errors, for a considerable number of years, where the ablest judges and the most learned counsel literally exhaust the whole subject of reviewing proceedings for contempt. And no cases are brought to light, where such proceedings, in the superior court, have ordinarily been held revisable, unless where the proceedings were so irregular as to be against law, and to give the court no proper jurisdiction. It is upon the ground, that the decision in *Ex parte Langdon,* 25 Vt. 680, goes.

2. Although an appeal lies in England from an interlocutory decree of the chancellor to the house of Lords, no instance can be found where such appeal, in a matter of contempt, has been maintained.   Certainly I can find none; and if one could be found, it will be no authority for such a proceeding here; but the want of such cases in England, is significant against allowing them here.

3. The very great absurdity of carrying every decree, in matters of contempt, before another tribunal,  where the facts in the case might be wholly unknown, and the attendant circumstances often incapable of proof, is a sufficient reason why we should hesitate to establish such a general doctrine or practice, unless upon the most satisfactory authority of the statute.

4. Proceedings in contempt often have no connection with any particular case, as for abuse of the court or its officers, in the presence of the court.   In these cases, an appeal is not, we presume, claimed to be allowable by any one.   The court itself, where the transaction occurred, could alone properly judge of its character and aggravation.   And if it be said that a power to punish at discretion is a dangerous power to trust to a single magistrate, however high, we can only say, it is one which the law of England has always seen fit to repose there, and our legislature has not denied it,— and one which, in these times, ordinarily, is very little liable to abuse.   The language of Ch. J. De Grey, is applicable.   " Some persons, some courts, must be trusted with discretionary powers ; chancery has no criminal jurisdiction ; but if that court commit for contempt, the persons committed *will not be discharged by any other court.*"

The appeal is dismissed.