STATE (AT THE RELATION OF WELSH) *v.* TOWLE.

Where a justice of the peace has jurisdiction to punish a contempt, his sentence will not be revised upon *habeas corpus*, either in respect to the sufficiency of the evidence or the application of the law; but the proceedings will be examined only so far as to see that the magistrate had jurisdiction. Neither is there in such case a right of appeal.

*J. Warren Towle,* and *C. H. Bell,* for the state.

*Wood,* for the respondent.

BELLOWS, J. The case is, that the relator, having been duly summoned to give his deposition in a cause in which he was plaintiff, and which was then pending in the Supreme Judicial Court of the county of Rockingham, refused to answer several questions put by the magistrate, upon the ground that his answers would disclose his case

and the manner he proposed to prove it; and thereupon the magistrate, after having required him to answer, issued an attachment for contempt, upon which the relator was brought before him, and the reasons for refusing to answer considered and adjudged insufficient; and he was then ordered to pay a fine of ten dollars, and costs of prosecution, and be committed to the jail in the county of Rockingham for nonpayment; and he is now held in custody by the respondent, as deputy of the sheriff, upon the warrant of the magistrate.

Upon this *habeas corpus*, the question is, can the judgment of the magistrate be revised in this way.

There is no doubt of the power of the court to look into the proceedings so far as to see whether the court pronouncing sentence had jurisdiction to do it. If it be found that it had no jurisdiction its judgment is void, and on *habeas corpus* the person imprisoned under it will be discharged. But if the court had jurisdiction of the subject matter and the party, its judgment is final and conclusive, and must stand until revised by appeal, writ of error, certiorari, or other proceeding in some higher court, instituted for that purpose; and can not be examined and revised collaterally by the writ of *habeas corpus*.

Such is unquestionably the doctrine of the common law. *Chamber's Case*, Cro. Car. 168; *Crosby's Case*, 3 Wilson 204, and cases cited; *Murray's Case*, 1 Wilson 299; *Holborn's Case*, 3 B. & Ald. 420; *Case of Sheriff of Middlesex*, 11 A. & E. 273; *Rex* v. *Carlisle*, 4 C. & P. 415. It is also the doctrine of the United States courts; *Ex parte Kearney*, 7 Wheat. 43, where *Story*, J. cites and approves the doctrine of *Crosby's Case*. In the matter of Kearney, it appears that he was committed by the circuit court for the District of Columbia for contempt in refusing to answer questions, upon the alleged ground that the answers would tend to criminate him. The Supreme Court refused to discharge him on *habeas corpus*, holding

that the circuit court had jurisdiction, and that where a court commits a party for contempt, the adjudication is a conviction, and the commitment in consequence is execution. *Story,* J., in referring to *Crosby's Case,* says that from the whole reasoning of the court, a writ of *habeas corpus* was not deemed a proper remedy where a party was committed for contempt by a court of competent jurisdiction, and if granted, the court could not inquire into the sufficiency of the cause of commitment. *Marshall,* C. J., holds a similar doctrine in *Ex parte Tobias Watkins,* 3 Peters 193. In *In re Metzger,* 5 How. U. S. 176, *McLean,* J., holds that however erroneous the judgment of the court may be, either in a civil or criminal case, if it had jurisdiction, and the defendant has been duly committed under an execution or sentence, he can not be discharged by this writ. So in *Johnson* v. *United States,* 3 McLean 89, it is held that on *habeas corpus* the court can not look behind the evidence, when the court pronouncing it had jurisdiction. Where additional punishment was wrongly awarded, it was nevertheless held that no relief could be had on *habeas corpus,* but the party must resort to his writ of error. *Ross'* and *Riley's Cases,* 2 Pick. 165, and *Riley's Case,* 2 Pick. 171. In *Adams* v. *Vose,* 1 Gray 51, where a sheriff, on execution, sold spirituous liquors without license, and was sentenced to pay a fine, by a justice of the peace, and committed, held he could not be discharged by *habeas corpus ; Dewey,* J. holding that the error, if any, in deciding upon the sufficiency of the evidence, or as to the law applicable to the facts, is to be corrected by an appeal; but the judgment, though erroneous, must stand until reversed by proper proceedings, instituted for that purpose, and can not be examined collaterally by *habeas corpus.* So is *In re Gates,* 4 Johns. 316 ; *People* v. *Nevins,* 1 Hill 170, and in note and cases in 3 Hill 601–666. So in *People* v. *Cassels,* 5 Hill 164. William Cassels was committed, by a justice of the peace, for

State *v.* Towle.

contempt, in refusing to answer certain questions, alleging that to do so would tend to criminate himself. The warrant of commitment stated that Cassels was called as a witness, on the examination of one Sally Grant, on a criminal complaint, and that he refused to answer. On *habeas corpus*, it was held that if the justice had authority to inquire into the alleged offense of Sally Grant, the commitment of Cassels could not be impeached upon *habeas corpus*, for any supposed error in requiring the witness to answer an improper question; and that was so, both under the statute and upon principle. The court say that it is competent to inquire whether there was, in truth, any process, and whether on its face it is valid, but not to rejudge the judgment of the committing magistrate. *In re Smith Trust*, 2 Sandf. 724, the case was, that on the return of an execution unsatisfied, a judge issued the usual order upon the debtor to appear before a referee, and make discovery, on oath, of his property, and upon refusing to answer certain questions put to him, the judge issued an attachment for the contempt, and the debtor was arrested. Upon *habeas corpus*, it was decided that the judge had jurisdiction of the subject-matter and the person of the debtor, and that if he erred, it was an error of judgment as to the sufficiency of the evidence, to be corrected, on motion, to himself, or by appeal, and not by this process. *In re Prince*, 1 Barb. 340, the court hold that it will not look beyond the colorable authority of the judge; and if he had jurisdiction, his decision will not be inquired into in this way. The same doctrine is held in *Ex parte Kellogg*, 6 Vt. 509, that a writ of *habeas corpus* is not the proper remedy where the judgment is merely erroneous or irregular, and not void; and that it is not so void where the court had jurisdiction of the subject-matter and the parties; and see, also, *In re Horsley*, 22 Vt. 363. *In re Powers*, 25 Vt. 261, a person found intoxicated was brought before a justice of the peace, and examined under

the statute as to where he obtained his liquor, and his answer was such that the justice adjudged that he refused to answer; and he was thereupon imprisoned under the magistrate's warrant until he should make disclosure. On *habeas corpus*, evidence was offered that he did in fact disclose; but the court refused, in this form, to reëxamine the proceedings of the magistrate. The same doctrine is held *In re Tracy*, 25 Vt. 93, where it is laid down that the errors and irregularities of a court of competent jurisdiction can not be reviewed on a writ of *habeas corpus*. To the same effect are *State* v. *Sheriff*, 3 Green 68; *In re Tomcy*, 11 Mis. 661; *In re Phinney*, 32 Me. 440; *Ex parte Shaw*, 7 Ohio (N. S.) 81; *Ex parte Maulsby*, 13 Md. 625, Appendix; and *Passmore Williamson's Case*, 26 Penn. 1. The two last cases were upon *habeas corpus*, to obtain the release of persons imprisoned for contempt; and they both maintain the doctrine that there is no distinction in principle between a judgment pronounced by a court after trial upon an indictment, and a summary judgment for contempt, as to their being impeached in a collateral proceeding. So is *Ex parte Kearney*, 7 Wheat. 43, and other cases before cited. A contempt is an offense at common law—a specific and substantive offense—and distinct from the matter under investigation when it is committed; and it belongs to the court before which it is committed to punish it.

The only question remaining, then, is whether the magistrate, in the case before us, had jurisdiction to punish the relator for contempt. There is no suggestion of any want of authority to take the deposition of the relator, or to require him to answer proper questions; and, that being granted, the jurisdiction to punish for contempt is established by the decision in *Burnham* v. *Stevens*, 33 N. H. 247. The jurisdiction thus being established, it is quite clear, upon the authorities, that the judgment of the magistrate can not be revised in this

way, and that his interpretation of the law, and its application tő the facts before him, must stand, until reversed directly upon some proper proceedings. Whether his judgment, and that of all other judicial tribunals having jurisdiction in cases of contempt, is not final and conclusive, is a question not strictly necessary to settle here.

In many adjudged cases, it is held that such judgments are final and conclusive, and 'can not be reversed by writ of error, appeal, *certiorari,* mandamus, or any other proceeding. Such seems to be the doctrine in *Crosby's Case,* 3 Wilson 188. There, *Blackstone,* J., says, the sole "adjudication of contempts and the punishment thereof, in any manner, belongs exclusively and without interference to each respective court. Infinite confusion and disorder would follow, if courts could, by writ of *habeas corpus,* examine and determine the contempts of others ; * * * so that the judgment and commitment of each respective court must be final and without control." And the substance of this is quoted with approbation by *Story,* J., in *Ex parte Kearney,* 7 Wheat. 38, and such is clearly the decision of the court in *Passmore Williamson's Case,* 26 Penn. 1 ; where the court, in its very able opinion by *Black,* J., lays it down that "the authority to deal with an offender of this class belongs exclusively to the court in which the offense is committed, and no other court, not even the highest, can interfere with its exercise, either by writ of error, mandamus, or *habeas corpus.* If the power be abused, there is no remedy but impeachment." And to this point he cites *McLaughlin's Case,* 5 W. & Serg. 276, and *Gates* v. *Lansing,* 9 Johns. 423. To the same effect is *Platt* v. *Bunton,* 27 Vt. 56.

But whether there be or be not any mode of revising such judgments, we are clear that it can not be done on *habeas corpus.* The power to punish for contempt, in cases of this sort, is expressly conferred upon justices of the peace, and in its exercise they clearly act judicially.

State *v.* Towle.

So long, then, as they keep within their jurisdiction, their judgments can not be collaterally revised or impeached. The cases cited of commitments for refusing to answer questions, upon the ground that the answers would tend to criminate the parties interrogated, and for refusing to disclose the person of whom the party purchased liquor, are strong authorities in point. If it be said that such power is dangerous and liable to abuse, the answer is that it is essential to the orderly conducting of business of courts of justice, which are the organs of the law; and that as to justices of the peace, in cases like this, the power is expressly conferred by statute.

But it is urged that the prisoner claimed an appeal and offered sureties. It does not, however, appear that the appeal was granted, and whether the right existed or not, this judgment can not be regarded as vacated. If the refusal to grant the appeal was erroneous, a remedy might probably be had by mandamus, as in *Ballou* v. *Smith*, 29 N. H. 530, or other proceeding; but it can not be contended that the judgment was vacated by the claim of an appeal which was not granted, the granting of an appeal being a judicial act. *Tichenor* v. *Hewson*, 2 Green 26; U. S. Dig. 191, sec. 776. The prayer for an appeal and offer of security does not constitute an appeal without an order of court. *Woodford* v. *Harrington*, 2 Pike 85; 4 U. S. Dig. 122, sec. 255. For refusal to grant an appeal, an *audita querela* was held to lie in Vermont. *Griswold* v. *Rutland*, 33 Vt. 324. The judgment of the court imposing the sentence not having been vacated or removed, must stand, and be regarded as conclusive upon the case now before us.

Nor are we prepared to hold that an appeal is the proper remedy, even if any remedy exists. Our law authorizes a justice of the peace to hear and determine prosecutions and actions of a criminal nature, where the punishment is by fine not exceeding ten dollars, and provides for appeals from his sentence in terms which would seem to apply to such

prosecutions and actions alone; and we are of the opinion that this right does not extend to sentences for contempt. To have such an effect, in a summary proceeding of this nature, where there is usually no mode provided for a revision of the sentence, the language ought to be clear and explicit, especially as it would tend to render nugatory the power conferred upon the magistrate. These views accord with various decisions. *State* v. *Woodfin*, 5 Iredell 199; 4 U. S. Dig. 410, sec. 2; *Patton* v. *Harris*, 15 B. Mon. 607; 16 U. S. Dig. 142, sec. 10; *Platt* v. *Bunton*, 27 Vt. 56; *Baltimore and Ohio Railroad* v. *Wheeling*, 13 Gratt. 40; 17 U. S. Dig. 132, sec. 10; *Huston* v. *State*, 6 Md. 423; and in *State* v. *Matthews*, 37 N. H. 450, it is held that there is no right of trial by jury in such cases.

The prisoner must, therefore, be remanded.