Hillsborough,
No. 5282.

### STATE *v.* AUDIAS A. BARON.

Argued December 2, 1964.
Decided February 26, 1965.

*William Maynard,* Attorney General, *George S. Pappagianis,* Deputy Attorney General, and *Emile R. Bussiere,* county attorney (*Mr. Pappagianis* orally), for the State.

*Broderick, Craig & Bourque* (*Mr. William H. Craig* orally), for the defendant.

LAMPRON, J.   About 8:00 A.M. on December 4, 1963, a housewife reported to the Pelham police that she observed a man, who proved to be the defendant, walking in a very odd manner in the middle of the road and going therefrom into a wooded area between her home and that of a neighbor.   Shortly thereafter the Pelham police began following foot tracks made in new snow and some time thereafter sighted the defendant ahead of them. The police chief, who was then accompanied by another officer, shouted at him to stop as they as police officers wanted to speak to him.   The chief, who was in full uniform, then blew his whistle.   The defendant turned and faced the police officers but kept going.

The officers kept following the tracks in the snow and found therein a brown shoe to a right foot which they picked up and also a brown felt hat which they found later.   The defendant then swam across a brook and was apprehended findably in Dracut, Massachusetts, about 2:00 P.M. by Dracut and Pelham officers.   He was taken to the Dracut police station and later to the Pelham station allegedly with his consent.

The defendant had been in the Pelham station from about 3 o'clock when at 5:15 P.M. notice was received by telephone that a Pelham residence had been broken into.   This house was situated next to the home of the housewife who had called the police that morning and started the search for the defendant.   Defendant was later indicted, tried and found guilty of breaking into and entering this house with intent to commit larceny.

There is no doubt that the Trial Court had jurisdiction over the offense with which the defendant was charged.   Assuming that the defendant was illegally arrested in Massachusetts in the early afternoon of December 4, 1963, before the officers knew

that the break had taken place; and that he was brought to this state without his consent (although it could be found on the record that he came to New Hampshire voluntarily); this would not preclude a subsequent valid indictment and trial. *Hall* v. *State*, 233 Md. 378; *Swogger* v. *Maxwell*, 176 Ohio St. 415; *Curry* v. *State*, 235 Md. 378.

The Trial Court having jurisdiction over the offense, and over the defendant because of his physical presence before it, his petition for a writ of habeas corpus was properly denied. *Springer* v. *Hungerford*, 100 N. H. 503, 505; *State* v. *Coan*, 91 N. H. 489; *Frisbie* v. *Collins*, 342 U. S. 519, 522; *Hobson* v. *Crouse*, 332 F. 2d 561 (10th Cir. 1964); *State* v. *Stewart*, 392 P. 2d 180 (Idaho 1964); *State* v. *Clark*, 392 P. 2d 539 (Wyo. 1964); *Piles* v. *State*, 233 Md. 487.

There was ample evidence in the record to support a verdict of guilty. However defendant maintains that certain articles of apparel, worn by him on the day of the crime, December 4, 1963, introduced in evidence at the trial were inadmissible as products of illegal search and seizure. *Mapp* v. *Ohio*, 367 U. S. 643; *Fahy* v. *Connecticut*, 375 U. S. 85, 87./

The police learned about 5:15 P.M. on that day that the home of one Lareau in Pelham had been broken into. In their investigation of the break later that evening the police made a plaster cast of foot prints in the snow leading to a window through which entrance to the Lareau house was alleged to have been made. *State* v. *Mihoy*, 98 N. H. 38. At the trial a shoe picked up by the police in their prior pursuit of the defendant was introduced in evidence as having been worn by him in making the tracks found outside the cellar window of the Lareau residence.

This shoe was not obtained by an officer of the law prying into a concealed place nor secured from the defendant by forcible dispossession, elements necessary to constitute a search and seizure. *People* v. *Woods*, 26 Ill. 2d 557. On the contrary, this shoe was picked up on the ground near a pond after it had come off defendant's foot. He was some distance from it and traveling in a direction away from the shoe at that time. Consequently this shoe was not obtained by an illegal search and seizure and being material and relevant evidence was properly admitted. *People* v. *Spicer*, 163 Cal. App. 2d 678; *People* v. *Escobosa*, 179 Cal. App. 2d 751.

After the defendant arrived at the Pelham police station about 2:00 P.M. that day, the chief took defendant's wet clothes to

his home to dry them and returned them to him about one hour later. Officer McBain testified that after he was informed of the break into the Lareau house he asked the defendant who was still at the police station for his clothing and his shoes and that the defendant let him have them. Tests produced incriminating evidence from the shirt so obtained.

There was evidence from which it could be found that the defendant had consented to come back to Pelham from Dracut to talk about his actions with the Pelham chief of police. It could also be found from the testimony of officer McBain, which was uncontradicted, that the defendant was asked to take off his shirt and did so voluntarily, and when he was asked for his other clothing and his shoes defendant let the officer have them.

We hold that on the facts and circumstances of this case the defendant voluntarily relinquished these articles to the police on request. They were not obtained by search or seizure and were admissible in evidence. *State* v. *Nelson*, 105 N. H. 184, 191. Defendant's claim of a previous illegal arrest in Massachusetts, if granted for the sake of argument, would not nullify a subsequent voluntary surrender of his articles of apparel. *People* v. *Burke*, 208 Cal. App. 2d 149, 162.

*Exceptions overruled.*

DUNCAN, J., did not sit; the others concurred.