Rockingham
No. 83-308

ROBERT A. BONSER

v.

JOHN COURTNEY, SUPERINTENDENT,
ROCKINGHAM COUNTY JAIL

April 16, 1984

798

*Douglas R. Bourdon*, of Nashua, by brief and orally, for the plaintiff.

*Shute, Engel & Morse P.A.*, of Exeter (*Mark S. Gearreald* on the brief and orally), for the intervenor Town of Nottingham.

KING, C.J.   This is an appeal from the denial of a petition for a writ of habeas corpus. Our inquiry is limited to three questions: (1) Did the superior court find the plaintiff, Robert A. Bonser, to be in indirect *civil* contempt or in indirect *criminal* contempt? (2) Does the plaintiff have standing in this appeal to raise his claims for a jury trial and to challenge the pertinent zoning regulations of the town of Nottingham? (3) Was the plaintiff a proper party to the underlying suit which resulted in the contempt order? For the reasons which follow, we affirm the decision of the superior court denying habeas corpus relief.

It is necessary to set forth the following pertinent facts which have been adduced from the record before this court. On or before July 22, 1981, six mobile homes had been installed on property owned by Cedar Waters Village, Inc. (Cedar Waters), to be used as residential dwellings. Robert A. Bonser was president and principal stockholder of Cedar Waters, and he and his wife had conveyed the property in question to Cedar Waters. The Town of Nottingham (town) alleged that the mobile homes were installed by Mr. Bonser and Cedar Waters in violation of various town planning board and zoning ordinance requirements.

The town notified Mr. Bonser on July 22, 1981, that he was in violation of the requirements of the town planning board and zoning ordinance, and requested the removal of the mobile homes before August 3, 1981. Mr. Bonser refused to comply.

The town on November 30, 1981, filed in Rockingham County Superior Court a petition to enjoin the alleged zoning violations of Mr. Bonser and Cedar Waters. The Superior Court (*Nadeau*, J.), on December 15, 1981, temporarily enjoined Mr. Bonser and Cedar Waters from placing any more mobile homes upon the property in question. The court order allowed the temporary use and occupancy

of the existing mobile homes provided that their use was not expanded "by the erection of temporary or permanent structures or by any other activity."

At the hearing on the temporary injunction, Mr. Bonser and Cedar Waters failed to challenge the validity of either the town's zoning ordinance or its subdivision rules and regulations. The superior court found that Mr. Bonser and Cedar Waters also admitted the allegations set forth in the town's petition to enjoin, and instead "relied on their inalienable constitutional rights as a defense."

Mr. Bonser and Cedar Waters were represented at the hearing by Rita G. Bixby, under a power of attorney. The town's counsel objected to Mrs. Bixby's participation at the hearing on the ground that she was not a licensed member of the New Hampshire Bar, and, upon questioning by the superior court, Mrs. Bixby admitted that she was not a member of the New Hampshire Bar. She also conceded that she had represented other individuals in New Hampshire courts, although she was unable to recall the exact number of times she had done so.

Before allowing Mrs. Bixby to represent Mr. Bonser and Cedar Waters at the hearing on the temporary injunction, the superior court fully advised Mr. Bonser of his right to be represented by a New Hampshire attorney. The superior court also explained that if Mrs. Bixby continued to represent Mr. Bonser, he would not be able to challenge future orders of the superior court on the ground that he was not properly represented.

The superior court order would have permitted Mrs Bixby to represent Mr. Bonser and Cedar Waters provided she had filed an affidavit with the superior court listing the following information: the name and address of each person she had represented in New Hampshire State courts in the past three years; the date and court in which each appearance had occurred; the nature of each case; her education, training and experience in matters dealing with the legal rights of others; and the outcome of each court action. Further, the superior court order required that Mrs. Bixby file the affidavit within two weeks after receipt of notice of the scheduled hearing on the merits of the petition to enjoin the alleged zoning violations, and only then would the court consider approval of her representation of Mr. Bonser and Cedar Waters.

On December 14, 1981, Mr. Bonser filed a claim for a jury trial in Rockingham County Superior Court. After a hearing on Mr. Bonser's claim, the Superior Court (Dalianis, J.) on January 27, 1982, offered to empanel an advisory jury pursuant to RSA 519:23 and RSA 491:16. The court order stated:

> "This is an equity proceeding. RSA 519:23 provides that the Court may direct proper issues to be framed for the *trial by jury on any question of fact;* further, RSA 491:16 provides that any such verdict is advisory only."

Accordingly, the superior court order granted a jury trial upon condition that

> "within 30 days of this order they [Mr. Bonser and/or Cedar Waters] submit proposed issues of *fact* to the Court. If no issues of *fact* are submitted, defendants will be deemed to have waived their request for trial by jury and the matter shall be scheduled on the next thereafter available issues to Court list. If issues of *fact* are so submitted, the case shall be tried during April term 1982."

Mr. Bonser never took advantage of this offer within the required thirty-day deadline by submitting proposed issues of fact to the superior court. Thus, he waived his claim for an advisory jury trial under the terms of the superior court order.

The equity hearing on the merits of the town's petition to enjoin was held in the Superior Court (*Contas,* J.) on June 3, 1982. The town's counsel moved to prevent Mrs. Bixby from representing Mr. Bonser in the case, asserting that Mrs. Bixby had failed to comply with the December 15, 1981, superior court order by not filing the required affidavit. Mrs. Bixby admitted to the presiding justice that she had not complied with the court order. She informed the presiding justice that her noncompliance was due to her belief that the order was "invalid" and that "[t]he judge was biased and prejudiced." Mrs. Bixby asserted that "Mr. Bonser has a right to counsel of his choice whether they belong to the bar or whether they are private citizens."

The superior court ruled that Mrs. Bixby had not complied with the court order and therefore was prevented from participating in the proceedings.

At the hearing, the town submitted its case on the pleadings without objection from Mr. Bonser. No answer had been filed by Mr. Bonser, but, prior to the hearing, Mr. Bonser had filed two special appearances, "*in propria persona,* retaining right of co-counsel of choice," seeking dismissal of the petition to enjoin. The town's counsel also introduced into evidence certain exhibits, an offer of proof, and the testimony of one witness that a seventh trailer had been placed on the property in question after the petition to enjoin had been filed by the town.

During the hearing, Mr. Bonser relied on his assertions that the town's zoning ordinance was unconstitutional and that the superior

court therefore did not have jurisdiction. He alleged that he was entitled to a jury trial in the equity proceeding.

On June 10, 1982, the Superior Court (*Contas*, J.) granted the town's petition to enjoin the zoning violations of Mr. Bonser and Cedar Waters. The injunction required Mr. Bonser and Cedar Waters to refrain from using or occupying the mobile homes until they complied with the pertinent regulations and ordinances of the town by September 1, 1982. If Mr. Bonser and Cedar Waters failed to comply with the town's zoning laws by that date, the court ordered them to "remove the mobile homes from the property and upon failure to have them removed the Town of Nottingham may have them removed at the defendants' [Mr. Bonser and Cedar Waters] expense."

A copy of the superior court order was mailed to Robert Bonser and Rita G. Bixby in a letter from the superior court clerk, Unwar J. Samaha, dated June 11, 1982. In the letter, the clerk informed Mr. Bonser and Mrs. Bixby of Mr. Bonser's right to appeal the superior court order:

> "This decree will become final unless a Notice of Appeal is filed with the Supreme Court within 30 days from the date of this letter, pursuant to Supreme Court Rule 7. If you have any questions concerning an Appeal, you should contact the Supreme Court, Concord, New Hampshire."

No such appeal was filed with this court.

On October 13, 1982, the town filed a "motion for contempt and modification of decree" in the superior court, alleging that Mr. Bonser and Cedar Waters had failed and refused to comply with the June 10, 1982, superior court order. On November 4, 1982, Mr. Bonser filed a special appearance in superior court in which he admitted, on behalf of himself and Cedar Waters, that he had failed and refused to comply with the order of the superior court dated June 10, 1982.

At a hearing in the superior court on November 23, 1982, Mr. Bonser, appearing with Mrs. Bixby, did not challenge the town's factual allegations. Mr. Bonser, again, asserted his right to a jury trial, alleged that the superior court was without jurisdiction, and challenged the constitutionality of the town's zoning ordinances.

The Superior Court (*Wyman*, J.) found Mr. Bonser in civil contempt for willful refusal to comply with the superior court order of June 10, 1982. Mr. Bonser's exceptions to the contempt order were noted.

The superior court assessed Mr. Bonser a fine for failure to comply with the order by the September 1, 1982, deadline and

imposed fines for "each and every day" Mr. Bonser remained in contempt on or after November 26, 1982, by failure to comply with the injunction. The owners of the mobile homes were ordered "to show cause why their mobile homes should not be removed either by themselves or by the Town of Nottingham at the expense of defendant Robert A. Bonser."

The superior court also informed Mr. Bonser that he had the right to appeal the contempt order and raise his jury claim in this court within thirty days from the date of the exception:

> "The Supreme Court can give you a jury trial and you may go there and ask them . . . .
>
> I have given you your exception. All you have to do is file the papers and go up there and ask them for a jury trial."

Mr. Bonser did not file an appeal of the November 23, 1982, contempt order with this court. Instead, Mr. Bonser filed a motion for reconsideration which was denied by the Superior Court (*Wyman*, J.) after a hearing, on December 20, 1982. Mr. Bonser's exception to the order was noted.

At the reconsideration hearing, Mr. Bonser, appearing with Mrs. Bixby, again argued that no prior superior court order was valid without a jury trial. *Wyman*, J., repeatedly informed Mr. Bonser and Mrs. Bixby of Mr. Bonser's right to appeal the contempt order and raise his claim for a jury trial on the contempt charge in this court:

> "If you wish to change this order, Mrs. Bixby, you have got to go up to the Supreme Court and get a stay. . . .
>
> I have said if you think that I am wrong and you do then go to the one place under our system that can tell me I am wrong and order me to give you a jury trial, and that is the Supreme Court. . . .
>
> The only way under the system that you can test whether I am right or wrong is to file a petition to the Supreme Court and ask them to overturn the trial court's decision.
> . . .
>
> If you don't take it to the Supreme Court, that is your option. You are still running a penalty which this Court intends to enforce by appropriate sanctions if you fail to honor. Unless the Supreme Court advises this Court, you are in error. . . .
>
> [W]ith the order that was made on November 23 as it relates to you unless that order is lifted I suggest it is very

much in your interest to get this question to the Supreme Court tomorrow morning, in fact, this afternoon."

Again, Mr. Bonser failed to seek any relief from this court.

The show cause hearing was conducted in Superior Court (*Dalianis*, J.) on February 3, 1983. At the hearing, Mrs. Bixby appeared on behalf of the owners of the mobile homes and reasserted Mr. Bonser's claim for a jury trial. The town's counsel moved to remove Mrs. Bixby as counsel on the ground that she was engaged in the unauthorized practice of law.

Thereafter, on February 15, 1983, the Superior Court (*Dalianis*, J.) reaffirmed the order of November 23, 1982, imposing civil fines, by a further order stating:

"Respondents having appeared and refused to show cause why the mobile homes in question should not be removed, other than to assert their claimed right to a jury trial herein, plaintiff [the town] is empowered, if the said mobile homes are not removed by defendants [Mr. Bonser and Cedar Waters] by March 31, 1983, to remove the same at defendants' expense. Plaintiffs are authorized to go upon the land and use reasonable means to accomplish the removal."

No appeal of this order was filed in this court.

The superior court also granted the town's motion to remove Mrs. Bixby as counsel, finding, based on the record and Mrs. Bixby's admissions, that she was "engaged in the practice of law without being licensed to do so." The superior court barred Mrs. Bixby "henceforth from appearing in Superior Court on behalf of individuals other than herself, unless and until the Supreme Court of New Hampshire directs otherwise." Mrs. Bixby did not appeal her removal as counsel for Mr. Bonser.

On March 17, 1983, the town filed a motion for *mittimus* in superior court seeking to enforce the earlier contempt orders. The town alleged that Mr. Bonser had failed and refused to pay the fines levied against him for contempt of court by the Superior Court order of November 23, 1982 (*Wyman*, J.), reaffirmed on December 20, 1982 (*Wyman*, J.), and on February 15, 1983 (*Dalianis*, J.).

At a hearing on the *mittimus* motion in superior court on April 12, 1983, *Douglas*, J. (sitting by special assignment) established, at the outset, that the proceeding was for civil and not criminal contempt. Mr. Bonser, appearing *pro se*, reasserted that he had a right to a jury trial in the underlying equity action as well as in the civil contempt case.

Also, Mr. Bonser alleged that he had been denied counsel of his choice, one Ralph Lombardi and one Mary Brady. Based upon the record before us, there is no indication that either person had filed an appearance with the superior court prior to the hearing. Further, the superior court had previously prohibited Ralph Lombardi and Mary Brady, among others, "from appearing before the Superior Court of New Hampshire until further order of the Court."

During the hearing, Mr. Bonser never indicated that he did not have the financial capacity to pay the fines levied against him by the superior court. Indeed, the court asked Mr. Bonser about his "ability to comply with the court order." The court inquired of Mr. Bonser, "[i]n other words, do you have the financial capability of paying the fine?" Mr. Bonser replied that he had "no intentions of paying the fine because I'm not guilty."

At the conclusion of the hearing, the Superior Court (*Douglas*, J.) found Mr. Bonser to be still in civil contempt and ordered him committed to the Rockingham County House of Correction until purged of contempt. Mr. Bonser's exception to the court order was noted. Further, the court vacated the earlier penalty fines assessed by the Superior Court (*Wyman*, J.) in its civil contempt order of November 23, 1982, and ordered immediate payment by Mr. Bonser of the $7,150 in fines that had accumulated since the November 23, 1982, contempt order.

On April 23, 1983, the Superior Court (*Douglas*, J.) issued an order and opinion supplementing its court order of April 12, 1983. In the supplemental opinion, *Douglas*, J., addressed Mr. Bonser's repeated claim for a jury trial:

> "It is unfortunate that the defendant is being misled by constitutional illiterates who seek to change the clear meaning of our fundamental charters. The right to jury trial is not unlimited or all encompassing and was never meant to be such under either [federal or State] constitution."

The supplemental order provided:

> "[D]efendant should on a monthly basis be brought before the trial court to be asked if he will and can comply with the outstanding court orders. Failing or refusing to do so he shall be returned to confinement. This being civil contempt (and not in any way criminal in nature) the defendant still holds the keys to the jail in his pocket."

Pursuant to the April 29, 1983, order, a hearing was conducted in the superior court on May 11, 1983, to determine whether Mr. Bonser "will and can comply" with the contempt order. Mr. Bonser

informed the Superior Court (*Bean*, J.) that he would not comply with the contempt order:

> "If I would have complied with this court order, I would have to forfeit the constitutional rights and civil rights of myself, my children and grandchildren. Under those circumstances, I cannot."

Thereupon, Mr. Bonser was returned to confinement.

On June 7, 1983, Mr. Bonser filed a petition for writ of habeas corpus in the Rockingham County Superior Court seeking his release from commitment, for civil contempt, in the house of correction. Attorney Douglas R. Bourdon filed an appearance in superior court on behalf of Mr. Bonser. At the hearing on the petition for habeas corpus relief in Superior Court (*Temple*, J.) on June 14, 1983, Mr. Bonser was represented by Attorney Bourdon.

On June 21, 1983, the Superior Court (*Temple*, J) denied Mr. Bonser's petition for a writ of habeas corpus. The superior court ruled, first, that Mr. Bonser was committed for indirect civil contempt, for which the requisite hearing was conducted; second, that Mr. Bonser was estopped from denying that he was a proper party to the underlying suit by his own course of conduct and judicial admissions; third, that Mr. Bonser's claims for a jury trial and various challenges to the town's zoning regulations were not proper grounds for habeas corpus relief. Mr. Bonser was released on bail pending his appeal to this court.

■■ We have long held that the standard of review in habeas corpus proceedings is whether the court pronouncing sentence acted beyond the scope of its jurisdiction. *Springer v. Hungerford,* 100 N.H. 503, 505, 130 A.2d 538, 539 (1957) (citing *State v. Towle,* 42 N.H. 540, 541 (1861)). If the trial court did not have jurisdiction over the subject matter of the underlying action and over the defendant, *State v. Baron,* 106 N.H. 149, 151, 207 A.2d 447, 449 (1965), the person imprisoned and seeking the writ will be discharged from commitment. *State v. Towle supra.* However, if the trial court had jurisdiction, "'its judgment is final and conclusive, and must stand until revised by appeal . . . or other proceeding . . . and can not be examined and revised collaterally by the writ of *habeas corpus.*'" *Springer v. Hungerford supra* (quoting *State v. Towle supra*); *see State v. Coan,* 91 N.H. 489, 490, 23 A.2d 369, 370 (1941).

■ However, this court has held that the jurisdiction of a court can be "lost" when constitutional rights of the plaintiff have been violated in the underlying proceeding which resulted in the commitment. *See State v. Clough,* 115 N.H. 7, 11, 332 A.2d 386, 389

(1975). Thus, a plaintiff by way of a petition for a writ of habeas corpus may collaterally attack that proceeding, after the time for direct appeal has expired, if harmful constitutional error can be established. *Id.*

We turn to the legal questions presented.

First, Mr. Bonser argues that the superior court did not cite him for indirect civil contempt, but rather for indirect criminal contempt without the requisite procedural safeguards. We disagree.

Contempt is "an offense at common law—a specific and substantive offense" that is distinct from the underlying matter in litigation out of which the contempt arose. *State v. Towle, supra* at 544. There are two classes of contempt, civil and criminal, which are distinguishable by the character and purpose of the punishment imposed. *Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 285, 385 A.2d 851, 853 (1978). In civil contempt, the punishment's purpose is remedial, coercive, and for the benefit of the plaintiff. *Id.*

> "Civil contempt proceedings may result in money fines payable to the complainant or *in an indeterminate jail sentence* until the contemnor complies with the court order. Thus the contemnor is said to carry the 'keys to the jail' in his pocket and stands committed until he performs the affirmative act required by the court's order."

*Id.*, 385 A.2d at 853–54. (Emphasis added.)

The purpose of prosecution for criminal contempt is punitive, to vindicate the "authority and dignity" of the trial court. *Scarborough v. R.T.P. Enterprises, Inc.*, 120 N.H. 707, 712, 422 A.2d 1304, 1308 (1980). The sentence is determinate, and "no amount of repentance will remit it." *Town of Nottingham v. Cedar Waters, Inc., supra* at 285, 385 A.2d at 854.

Contempts are either direct or indirect. Douglas, *Civil and Criminal Contempt in New Hampshire*, 17 N.H.B.J. 13, 16 (1975). Direct contempt is committed in the "presence" and "immediate view" of the court. *Town of Nottingham v. Cedar Waters, Inc. supra.* Each element of the contempt is personally observable by the judge. *Id.*; Douglas *supra.*

Indirect contempt is committed outside the court and "without the judge having full personal knowledge of every element of the contempt." *Town of Nottingham v. Cedar Waters, Inc. supra.* Thus, indirect contempt arises from events of which the presiding judge could not take judicial notice. *Id.*

In this case, the contempt is civil. The superior court's purpose, in

finding Mr. Bonser in contempt of outstanding superior court orders, was remedial. The town filed the *mittimus* motion in order to compel Mr. Bonser's compliance with the town's building and zoning codes, and the superior court granted the motion and found contempt for the benefit of the town; that benefit being the orderly compliance with its zoning laws by Mr. Bonser and Cedar Waters.

Mr. Bonser was sentenced to an indeterminate term of commitment and was capable of purging himself of contempt and unlocking the jailhouse doors at any time by paying the accumulated fines and complying with the outstanding superior court orders. He presented no evidence to the superior court that he lacked the financial means to comply with the contempt order; Mr. Bonser merely expressed his unwillingness to comply.

The case at hand is distinguishable from the procedural history in *Town of Nottingham v. Cedar Waters, Inc.*, in which this court overturned a criminal contempt order. There the superior court, on its own initiative, converted a civil contempt request by plaintiff's counsel into a criminal contempt order, imposing a determinate five-month jail sentence, without following the proper procedural requirements. *Id.* at 287, 385 A.2d at 855. Here, an indeterminate sentence of commitment was imposed by the superior court, at the request of the town, to serve the town's purposes. *See MacNeil v. United States*, 236 F.2d 149, 154 (1st Cir.), *cert. denied*, 352 U.S. 912 (1956).

■■■ Further, the civil contempt of Mr. Bonser in this case is indirect. Mr. Bonser's noncompliance with the various superior court orders, including his failure to pay the penalty fines, occurred outside the courthouse and beyond the purview of the presiding judge. Accordingly, Mr. Bonser was afforded ample opportunity to explain his reasons for willful noncompliance with the contempt order in numerous hearings, free of procedural irregularities, in superior court. *See State v. Matthews*, 37 N.H. 450, 453–56 *et seq.* (1859); Douglas, *supra* at 16, 24–25.

Second, Mr. Bonser contends that he has standing in this appeal to dispute the validity of the injunction based upon his claim for a jury trial and challenges to the constitutionality of the town's zoning ordinance asserted at the underlying equity proceeding. Further, he argues that he has standing to challenge the constitutionality of the contempt order based upon his requests, at the contempt proceedings, for a jury trial.

■■■ Based upon this court's standard of review in habeas corpus proceedings, we will not disturb a decision of a court of competent jurisdiction, *State v. Baron*, 106 N.H. at 151, 207 A.2d at 449;

*Springer v. Hungerford*, 100 N.H. at 505, 130 A.2d at 539; *State v. Towle*, 42 N.H. at 541, unless the plaintiff can establish harmful constitutional error in the underlying proceeding. *State v. Clough*, 115 N.H. at 11, 332 A.2d at 389. Thus, the scope of judicial review in a petition for a writ of habeas corpus extends to collateral attacks on the constitutionality of the civil contempt proceeding that resulted in the order of commitment. Therefore, Mr. Bonser does have standing in this appeal to raise collaterally his claim that he was deprived of his constitutional right to a jury trial in the underlying civil contempt proceeding.

■■■■ Mr. Bonser's claim for a jury trial in the contempt hearing is meritless. This court has long held that a defendant in a contempt proceeding is "not entitled, under the constitution, to a trial by jury." *State v. Matthews*, 37 N.H. 450, 456 (1859). The federal rule is identical: "The conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of . . . jury. . . ." *Shillitani v. United States*, 384 U.S. 364, 370–71 (1966) (citation omitted).

■■■■ We will not, however, collaterally review Mr. Bonser's asserted claim for a jury trial and various challenges to the constitutionality of the town's zoning ordinance made at the superior court hearing of June 3, 1982, on the town's petition to enjoin. In *City of Lebanon v. Townsend*, 120 N.H. 836, 424 A.2d 201 (1980), this court held that in our review of a civil contempt proceeding we would not consider the underlying action out of which the contempt order arose. *Id.* at 838–39, 424 A.2d at 203. We opined that "once a court having jurisdiction over the subject matter and the parties renders a final order within its authority, that order 'becomes *res judicata* and not subject to collateral attack in the contempt proceedings.'" *Id.* at 839, 424 A.2d at 203 (quoting *Maggio v. Zeitz*, 333 U.S. 56, 68 (1948)); *see State v. Linsky*, 117 N.H. 866, 876, 379 A.2d 813, 819 (1977). We further established that a person subject to a contempt order "must obey that order until it is reversed on direct appeal, stayed or dissolved by the court, regardless of how constitutionally suspect the ordinance upon which it is based may be." *Id.* at 839, 424 A.2d at 203. Accordingly, this court held that the defendant in that case, in his appeal from a 1979 civil contempt order for failure to comply with a 1971 court order, had no standing to attack collaterally the 1971 order. *Id.*

■■■■ Since Mr. Bonser was precluded from collaterally attacking the merits of the underlying injunction in the contempt

proceedings in superior court, so too is he prevented from collaterally challenging the merits of the underlying injunction in the habeas corpus proceeding. Our holding in *City of Lebanon*, together with the rule of this court which provides for appellate review of a lower court decision, SUP. CT. R. 7, clearly put Mr. Bonser and his lay counsel on notice that he could not bypass orderly judicial review of the superior court injunction before disobeying it. *See Walker v. City of Birmingham*, 388 U.S. 307, 320, *reh'g denied*, 389 U.S. 894 (1967). The rule of law that we follow in this case, that a person who does not directly appeal a superior court injunction is precluded from challenging the merits of the injunction in a later contempt hearing and thus in a subsequent habeas corpus proceeding, reflects the belief that, in the fair administration of justice, no person, however righteous a motive, can disobey an injunction, regardless of its asserted invalidity. *See id.* at 320–21.

Mr. Bonser never sought reversal, by direct appeal to this court, of the June 10, 1982, superior court order enjoining the zoning violations. Instead, he disregarded a June 11, 1982, letter from the superior court clerk informing him and lay counsel of his choice, Mrs. Bixby, of his right to file an appeal within thirty days from the date of the letter. Indeed, Mr. Bonser had earlier waived his claim for an advisory jury trial under RSA 519:23 and RSA 491:16 by failing to submit proposed issues of fact before the thirty-day deadline imposed by the superior court.

In defense of his failure to file with this court a direct appeal of the superior court injunction, Mr. Bonser maintains that he had an "imperfect understanding" of the requirements of the superior court. Thus, Mr. Bonser argues that he should be able to raise in this habeas corpus proceeding the constitutionality of the superior court injunction. Such a defense strains credulity.

Mr. Bonser purposely chose not to select a member of the New Hampshire Bar, preferring instead to rely on lay counsel of his choice. Through the indulgence of the superior court, and despite lay counsel's failure to comply with a December 15, 1981, superior court order, Mr. Bonser was represented by lay counsel in a vast majority of the proceedings in superior court. Together, Mr. Bonser and lay counsel filed, in superior court, a veritable avalanche of motions, countermotions, and special appearances. Further, Mr. Bonser had been involved in previous litigation with the town over his alleged failure to comply with the town's zoning ordinances and was aware of the procedure to raise issues on appeal for review by this court. *See Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. at 282, 385 A.2d at 851. We agree with the Superior Court (*Temple*,

J.) that if Mr. Bonser indeed had an "imperfect understanding" of the law, it was due to his own choice of counsel.

■ We hold that Mr. Bonser's claim for a jury trial and his various challenges to the town's zoning laws, made in the underlying equity proceeding, are not a proper basis for habeas corpus relief. Therefore, Mr. Bonser is without standing in this appeal to raise either issue.

Third, Mr. Bonser argues that he is not a proper party to the underlying equity action, and, thus, that the superior court lacked jurisdiction when it found him individually in contempt for failing to comply with the June 10, 1982, superior court order. We disagree.

Mr. Bonser maintains that he does not own the land upon which the mobile homes were placed. Rather, he alleges that the proper party to the equity proceeding, Cedar Waters, was never properly made a party to the equity proceedings.

The record before us indicates that Mr. Bonser never disavowed ownership of the land in question during the pendency of the case in superior court. At the hearing on the merits of the town's petition to enjoin, Mr. Bonser failed to object to the town's offer of proof and submission of the case on the pleadings. At no point during the hearing did Mr. Bonser disavow his ownership of the land. Also, Mr. Bonser admitted, in various pleadings in the record before this court, that he is in fact the owner of the pertinent land.

■ In view of Mr. Bonser's judicial admissions, we agree with the Superior Court (*Temple*, J.) that Mr. Bonser is estopped from denying that he is a proper party to the underlying equity action. *See City of Concord v. Tompkins*, 124 N.H. 463, 468, 471 A.2d 1152, 1154 (1984); *see also Brooks v. New Durham*, 55 N.H. 559, 560–61 (1875); *Burbank v. Rockingham M.F.I. Company*, 24 N.H. 550, 561 (1852).

*Affirmed.*

DOUGLAS, J., did not sit; the others concurred.