## Town of Hinesburg v. Paul Dunkling

[711 A.2d 1163]

No. 96-632

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed April 10, 1998

*Philip C. Woodward* and *Douglas D. Le Brun* of *Dinse, Erdmann, Knapp & McAndrew, P.C.*, Burlington, for Plaintiff-Appellee.

*Liam L. Murphy* and *Eric M. Knudson* of *Langrock Sperry & Wool*, Middlebury, for Defendant-Appellant.

*Priscilla B. Fox*, Montpelier, for Amicus Curiae Vermont League of Cities and Towns.

**Skoglund, J.** Defendant/landowner Paul Dunkling appeals the Chittenden Superior Court's grant of plaintiff/cross-appellant Town of Hinesburg's summary judgment motion and grant of Town's request for a mandatory injunction and fine for noncompliance with a town zoning bylaw. Landowner contends that: (1) Town's notice that the zoning board of adjustment (ZBA) had rendered a decision was insufficient to raise the bar of 24 V.S.A. § 4472 in Town's subsequent enforcement action, (2) because the assessed fine was punitive in nature, landowner was entitled to the same due process and constitutional safeguards as a defendant in a criminal proceeding, and (3) the court exceeded its authority by awarding Town a portion of its actual and prospective attorney's fees. Town cross-appeals contending that the court abused its discretion by awarding a fine that is less than Town's actual and reasonable expenses incurred while pursuing the enforcement action against landowner. We affirm.

Landowner owns a parcel of land within Town's boundaries. In August 1990, landowner excavated a hole and then erected an earthen dam, which backed up a stream that ran through his property. This dam created a 0.7 acre pond. Neighbors, downstream from landowner, complained to Town that the stream was now dry. Town investigated and discovered landowner's dam and pond and determined that landowner was in violation of a town bylaw because he failed to obtain a permit for the pond's excavation and dam's construction.[1]

In August 1990, Town sent landowner a notice of violation, and landowner appealed this determination to the ZBA. The ZBA upheld the violation determination, but permitted landowner to file an after-the-fact permit for the pond and dam. In November 1990, the permit was approved with certain conditions, including a requirement

---

[1] The Town's zoning bylaw provides:

> No person shall undertake any land development without a valid permit issued by the Zoning Administrator that specifically authorizes the action. To undertake land development is to . . .
>
> . . . .
>
> (8) Excavate for ponds or swimming polls.

that the dam be inspected and approved by a certified civil engineer and that there not be an adverse impact on water quality and quantity downstream from the dam. Landowner agreed to these conditions and was given until September 1991 to comply.

By September 1991, landowner had failed to satisfy the permit conditions and instead appealed to the ZBA for relief from the permit conditions. The ZBA granted landowner until February 1992 to provide the ZBA with either a plan addressing the safety of the dam and water quality and quantity issues or a plan to dismantle the dam and return the site to its original condition.

Again, in February 1992, landowner failed to comply with the ZBA's demands and the ZBA, on its own initiative, scheduled an inspection of the dam by the State Agency of Natural Resources. The inspection determined that the dam's construction failed to meet current engineering standards, the spillway was inadequate, and the dam could fail under flood conditions.

The ZBA, after receiving the inspection report, scheduled a hearing concerning landowner's appeal for June 18, 1992. Landowner attended the meeting, and his case was the first to be heard that evening. Instead of providing the ZBA with the requested plan, however, landowner reiterated his request that the ZBA remove the permit conditions. After several neighbors voiced their concerns and landowner was given an opportunity to speak, the ZBA completed the public hearing on the appeal and informed landowner that the ZBA had forty-five (45) days to render its decision. Landowner left the hearing immediately afterwards, and the ZBA took up other issues on that evening's agenda. At the end of the hearing, however, the ZBA revisited landowner's appeal and unanimously denied landowner's appeal for relief.[2]

A copy of the hearing's minutes were sent by certified mail to landowner's address. Town had mailed correspondence to this address previously without any difficulty. The minutes of the hearing consisted of four single-spaced typewritten pages. The minutes of the public hearing on landowner's appeal appeared in a paragraph denoted "2." that began at the top of the first page and ended a little less than half-way down the second page. The remainder of the minutes on page 2 and 3 dealt with other matters before the ZBA, and

---

[2] Furthermore, the ZBA unanimously granted a stay of enforcement "from November 14, 1991 which is the date the appeal was received in the Town Hall to 18 June 1992 which is the date of the [ZBA's] final decision."

each issue was indicated by a separately-numbered paragraph. The ZBA's final decision regarding landowner's appeal and the granting of a stay of enforcement began at the bottom of the third page, in an unnumbered paragraph, and ended half-way down the fourth page just prior to a statement that the hearing was adjourned and the signature of the recording secretary. The ZBA's decision was not highlighted nor emphasized in any way to set it apart from the other issues discussed at the hearing. Furthermore, no other information or documents were included with the minutes to indicate that the minutes contained the final decision of the ZBA. Landowner claims he never received the minutes or signed the certified mail receipt. Town, however, received a signed receipt for the certified mail, dated June 30, 1992.

Landowner never appealed the ZBA's decision. In August 1992, Town, sending landowner a letter to the same address the minutes had been mailed and referencing the minutes and the ZBA's decision, informed landowner that Town would initiate an enforcement action unless he complied with the permit's conditions or removed the dam and pond. Landowner acknowledged receipt of this letter but again failed to satisfy Town's mandate. In January 1993, Town commenced an enforcement action and requested (1) a mandatory injunction to require the dismantling of the pond and dam and (2) a fifty dollar ($50) per day fine running from June 18, 1992 until compliance.[3] Upon learning that Town had initiated an enforcement action, landowner again failed to appeal the ZBA's decision.

After discovery was complete, Town moved for summary judgment, claiming that landowner, because he failed to timely appeal the ZBA's final decision, was now barred from presenting any defenses to the enforcement action. The court granted Town's motion for summary judgment, and landowner appealed to this Court. Because the court failed to address the issue of relief to be accorded to Town, however, both parties requested the matter be remanded for determination of that issue.

At the hearing after remand, landowner, asserting that Town's requested fine was punitive, claimed he should be afforded the same range of constitutional protections as a criminal defendant, i.e., a

---

[3] Town subsequently revised its request for a fine. Instead of the $50 per day fine, Town requested that it be held harmless and that the fine "at a minimum, cover the Town's attorney's fees (including those that will be incurred in the inevitable appeal) and cover the Town personnel costs related to pursuing this matter." The Town estimated its costs and attorney's fees "amounted to a fine of less than $10 per day."

right to (1) a jury trial, (2) a presumption of innocence, (3) have the violation proved beyond a reasonable doubt, and (4) be free from compelled self-incrimination. Furthermore, landowner contended that because of the punitive aspects of the sought relief, he should be allowed to contest the underlying merits of the violation, and not just be restricted to challenging the issue of relief. Therefore, he requested that he be allowed to present a defense and call witnesses in his own behalf. The court, while declining to reopen the court's granting of Town's motion for summary judgment, granted landowner's request for the limited purpose of determining whether Town's requested injunction and fine were appropriate.

At the hearing, landowner attempted to prove that the alleged violation was de minimis and innocent in nature and, hence, injunctive relief would be inappropriate. The court found, however, that the violation was substantial and landowner's "failure to obtain a permit initially and his failure to comply with the conditions of the after-the-fact permit are neither innocent [nor] unknowing." Thus, the court ordered landowner to comply with the permit's conditions within thirty (30) days or dismantle the pond and dam and restore the site to its original condition within sixty (60) days. Furthermore, the court ordered landowner to pay a fine, which would be "remedial in nature." This fine would permit Town to recover its significant, reasonable, and necessary costs amassed while trying to resolve the case. The fine would be determined "by dividing the number of days of noncompliance, (beginning June 19, 1992), into the final amount of reasonable attorneys fees and costs (to be determined at the conclusion of this action) less $4000.00 [– the cost that landowner had incurred in attempting to comply with the permit conditions.]" These appeals followed.[4]

## I.

Landowner first contends that the court erred in granting Town's summary judgment motion. Landowner claims that the ZBA's reliance on the minutes of the hearing to serve as notice of the ZBA's final decision was both statutorily and constitutionally defective. He asserts the court erroneously found that he had received adequate notice that the ZBA had rendered a final decision and, therefore, he

---

[4] In landowner's brief to this Court, landowner concedes that he intends to comply with mandatory injunction and, therefore, raises issues concerning only the imposition of the court-ordered fine.

was impermissibly barred from asserting any affirmative defenses to the enforcement action. We disagree.

■ When reviewing a grant of summary judgment, we apply the same standard as the trial court. See *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 389 (1996). We will affirm a summary judgment if, after taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See *id.* With this standard in mind, we now turn to the merits of landowner's appeal.

## A.

Landowner first contends that Town's use of the minutes to notify him that a final decision had been reached was statutorily deficient. Vermont law requires a ZBA to render a decision on an appeal within forty-five (45) days of completing the hearing and that the decision shall include findings of fact. See 24 V.S.A. § 4470(a). Furthermore, within that same forty-five-day period, the ZBA must send the appellant a copy of the decision by certified mail. See *id.* An interested person's exclusive remedy is to appeal a decision of ZBA to the superior court. See *id.* §§ 4471, 4472(a).[5] Such an appeal must be perfected pursuant to the terms of V.R.C.P. 74 and, therefore, a notice of appeal must be filed within thirty (30) days of the ZBA rendering its final decision. See V.R.A.P. 4. Failure to timely appeal a ZBA decision to the superior court binds all interested persons to the ZBA's decision and bars them in later proceedings — including enforcement actions — from contesting, "either directly or indirectly," the ZBA's decision. 24 V.S.A. § 4472(d).

### 1.

Landowner first contends that the organization, form, and style of the minutes was not statutorily sufficient to put him on notice that a decision had been reached. We have always been concerned that appeal rights could be lost if towns decided to "bury [the decision] in the minutes of a meeting, and neglect to comply with the notification requisites of the statute." *Glabach v. Sardelli*, 132 Vt. 490, 495, 321 A.2d 1, 5 (1974), *overruled on other grounds, Leo's Motors, Inc. v. Town of Manchester*, 158 Vt. 561, 564, 613 A.2d 196, 198 (1992). This

---

[5] In 1994, § 4471 was amended and now requires that appeals of ZBA decisions be made to the environmental court.

concern, however, is alleviated if the statutory requirements are complied with or if the failure to give notice "is inadvertent and not the result of a policy or purpose to withhold notice of the decision." *Leo's Motors, Inc.*, 158 Vt. at 565, 613 A.2d at 199.

■ First, there is no evidence that Town's purpose in using the minutes was to withhold notice or to "hide" the decision from landowner. Second, it is undisputed that the ZBA informed landowner at the June 18, 1992 hearing that the hearing on his appeal was closed and that they would render a decision within forty-five days. It is also undisputed that later that evening the ZBA rendered its final decision and, within forty-five days, Town mailed the minutes by certified mail to landowner's correct address and received back a signed receipt for the certified mail. We note that nowhere in the applicable statutes does it delineate the form or style in which the decision must be memorialized or how the decision must be organized. Because the statute's meaning is clear and unambiguous about what a town is required to do to put an appellant on notice and start the thirty-day clock running, we will enforce the statute according to its terms and will not add additional requirements for towns to meet. See *Green Tree Credit Corp. v. Kenyon*, 163 Vt. 631, 632, 660 A.2d 296, 298 (1995).

■ Because Town fulfilled its statutory duties and there is no evidence that Town's purpose in using the minutes as notice was to intentionally hinder landowner's ability to determine that a final decision had been rendered, we conclude that landowner received notice, and the time period in which he could appeal the ZBA's decision began to run when the requirements of § 4470(a) were satisfied.

## 2.

■ In addition, landowner claims that the minutes do not contain any finding of facts as required by § 4470(a) and, therefore, are statutorily deficient to serve as notice. Because landowner failed to take advantage of his exclusive remedy of appealing the ZBA's decision to the superior court within thirty days of the ZBA rendering its decision, he is precluded from collaterally attacking the granting of the summary judgment motion by claiming that the decision did not include any findings of fact. See *City of Rutland v. McDonald's Corp.*, 146 Vt. 324, 331, 503 A.2d 1138, 1143 (1985) (holding that failure to appeal ZBA's decision by the exclusive remedy of direct appeal precludes party from later challenging inadequacy of findings of fact).

## B.

Landowner also contends that the Town's use of the minutes to serve as notice was constitutionally deficient and abridged his due process rights. See *Town of Randolph v. Estate of White*, 166 Vt. 280, 284, 693 A.2d 694, 696 (1997) (To satisfy due process requirements, Town's notice of a zoning violation must include "(1) the factual basis for the deprivation, (2) the action to be taken against them, and (3) the procedures available to challenge the action."). Landowner failed to adequately raise his constitutional claim below. See *Hall v. Department of Social Welfare*, 153 Vt. 479, 487, 572 A.2d 1342, 1347 (1990).

In his brief on appeal, landowner contends his due process rights were denied. Specifically, he states "the notice of decision that Hinesburg allegedly sent to Mr. Dunkling was so deficient that no reasonable person would have been put on notice that a decision had been rendered [and, therefore,] due process would prevent the application of the affirmative defenses bar of 24 V.S.A. § 4472 to Mr. Dunkling . . . ." After this perfunctory due-process assertion, however, landowner returns to his original statutory-deficiency claims and reasserts in detail the alleged problems with the minutes, e.g., (1) the minutes appeared no different from the minutes of previous hearings that landowner had attended, (2) the minutes were not specifically addressed to landowner, (3) the minutes were single-spaced, (4) the organization of the minutes was faulty, and (5) there was a lack of highlighting of the part of the minutes where the ZBA rendered its decision.

Only after Town answered in its brief that landowner had failed to first raise the due-process claim before the trial court does landowner, in his reply brief, more fully explain his constitutional challenge to the adequacy of notice. In addition, landowner asserts that the constitutional issue was in fact raised before the trial court in one of his memoranda to the court. As in his brief to this Court, however, the memorandum referenced only the statutory sufficiency of the minutes. To further support his claim of preservation, landowner also points to an objection made during the hearing on the motion for summary judgment, which states in full:

> And now, I think, for the record, Your Honor, I need to raise at this point also the constitutional issue. If the Town of Hinesburg is saying that they can bind somebody to a decision by sticking it in the mail, even if the Defendant never gets the decision, and doesn't know that there is

anything to appeal or if there's a time clock running, then I think his due process rights are violated. I want that on the record, too, in case this case happens to go up on appeal.

■ In this objection, however, landowner fails to explain to the court how his due-process rights were violated and, more importantly, a careful analysis of his objection reveals that landowner, while cloaking his objection in constitutional terms, was in fact only reasserting one of his statutory challenges — in short, "The notice was inadequate because I never received the minutes." The objection was insufficient to preserve for appeal any constitutional challenge to the adequacy of landowner's notice. See *In re D.C.*, 157 Vt. 659, 660, 613 A.2d 191, 191 (1991) ("In order to effectively raise objection to action by a court, a party must present the issue with specificity and clarity in a manner which gives the court a fair opportunity to rule on it."); see also *Fitzgerald v. Congleton*, 155 Vt. 283, 295, 583 A.2d 595, 602 (1990) (A "well-settled rule is that party opposing summary judgment motion must inform trial court of reasons, legal and factual, why summary judgment should not be entered, and if it does not do so, and loses the motion, it cannot raise such reasons on appeal.") (construing *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983)).

Landowner was put on notice that a decision was reached on his appeal. Because landowner failed to appeal the decision within thirty days, he was barred from directly or indirectly attacking the ZBA's decision at the enforcement action. There being no genuine issue of material fact, we conclude that the court did not err in granting Town's motion for summary judgment.

## II.

■ A civil penalty is remedial in nature, while a criminal penalty is designed for deterrence and retribution. See *State v. Strong*, 158 Vt. 56, 60, 605 A.2d 510, 512-13 (1992). We recognize that the determination of whether a penalty is civil or criminal in nature "is of some constitutional import." *United States v. Ward*, 448 U.S. 242, 248 (1980). One who is assessed a criminal penalty must be provided certain constitutional rights that are not granted to one who is assessed a civil penalty, e.g., protection from self-incrimination, federal sixth amendment protections, prohibition against being placed in double jeopardy, and the requirement that the case be proven beyond a reasonable doubt. See *id.* Landowner contends that

because the fine authorized by 24 V.S.A. § 4444 is punitive, the court abridged the constitutionally-protected rights afforded a criminal defendant by (1) not allowing him to present affirmative defenses, (2) failing to require Town to prove the violation beyond a reasonable doubt, and (3) prohibiting him from cross-examining witnesses. Until today, we have declined to decide whether a fine imposed pursuant to § 4444 is a civil or criminal penalty. See *Town of Sherburne v. Carpenter*, 155 Vt. 126, 133 n.*, 582 A.2d 145, 150 n.* (1990). We conclude that the fine is civil and, therefore, the court was not required to extend to landowner the same constitutional guarantees that are afforded criminal defendants.

■ A determination of whether a statutorily defined penalty is civil or criminal is a matter of statutory construction. See *Strong*, 158 Vt. at 60, 605 A.2d at 512-13. In making such a determination, we are required to use a two-step analysis. See *Ward*, 448 U.S. at 248; *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237 (1972). First, we must determine whether the Legislature, either expressly or impliedly, intended the penalty to be criminal or civil. See *Strong*, 158 Vt. at 60, 605 A.2d at 513; cf. *One Lot Emerald Cut Stones*, 409 U.S. at 236-37 (determining whether Congress, in creating the penalty, indicated a preference that the penalty be criminal or civil). Second, if we conclude that the Legislature intended to create a civil penalty, we must determine whether the penalty's purpose or effect is excessively punitive. See *Strong*, 158 Vt. at 60, 605 A.2d at 513 (citing *Ward*, 448 U.S. at 249).

## A.

■ In order to determine the Legislature's intent — the first step in our analysis — we first look to the language of the statute itself. See *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996). The Legislature is presumed to have intended the plain, ordinary meaning of the language. See *id.* If the meaning of the statute is plain on its face, there is no need for statutory construction because "the legislative intent is to be ascertained from the act itself." *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335-36, 576 A.2d 450, 453 (1990).

Section 4444(a) of Title 24, captioned "Enforcement; penalties," provides in relevant part:

> Any person who violates any bylaw after it has been adopted under this chapter . . . shall be fined not more than fifty dollars for each offense. No action may be brought

under this section unless the alleged offender has had at least seven days' warning notice by certified mail. . . . The seven-day warning notice shall state that a violation exists, that the alleged offender has an opportunity to cure the violation within the seven days and that the alleged offender will not be entitled to an additional warning notice for a violation occurring after the seven days. In default of payment of the fine, such person . . . shall . . . pay double the amount of such fine. Each day that a violation is continued shall constitute a separate offense. All fines collected for the violation of bylaws shall be paid over to the municipality whose bylaw has been violated.

The plain language of § 4444(a) evinces an intent to create a civil penalty for violation of a town's bylaws. Upon notice of a violation, the alleged offender is permitted to cure the violation, and if cured, no penalty will be assessed. An alleged violator of a criminal statute, however, is usually not afforded the ability to cure a violation, i.e., once a violation has occurred, the violator is criminally liable whether or not the violation is subsequently cured. See, e.g., 32 V.S.A. § 5894 (individual still criminally liable for failure to timely pay tax liability even if subsequently paid). Further, we have held that the distinction between civil and criminal contempt derives from the purpose of the punishment imposed. See *Russell v. Armitage*, 166 Vt. 392, 407, 697 A.2d 630, 640 (1997) (Morse, J., concurring). Penalties for criminal contempt are imposed to punish the defendant and "'to vindicate the "authority and dignity" of the trial court,'" *id.* (quoting *Bonser v. Courtney*, 481 A.2d 524, 531 (N.H. 1984)), while civil contempt penalties are assessed to coerce the defendant "'to do some act ordered by the court for the benefit or advantage of the opposite party.'" *Id.* (quoting *In re Sage*, 115 Vt. 516, 517, 66 A.2d 13, 14 (1949)). The key difference between civil and criminal contempt is that civil contempt penalties must be "capable of being avoided by defendants through adherence to the court's order," i.e., purgeable. *Id.* As with the above discussed civil contempt penalties, in the present case, § 4444(a) permits a violator to cure the violation before being subject to the statutory fine. The opportunity to cure establishes the remedial nature of § 4444 and reveals that the statute's primary purpose is to bring about cessation of the violation. We conclude that the plain language of § 4444 indicates that the landowner's assessed fine was coercive and remedial and therefore civil in scope.

## B.

Because we have determined that the legislative intent was to make § 4444 a civil penalty, we are required to determine "'whether the statutory scheme [is] so punitive either in purpose or effect as to negate that intention.'" *Strong*, 158 Vt. at 60, 605 A.2d at 513 (quoting *Ward*, 448 U.S. at 248-49). In determining whether a penalty is excessively punitive, however, "only the clearest proof [will] suffice to establish the unconstitutionality of a statute on such a ground." *Flemming v. Nestor*, 363 U.S. 603, 617 (1960).

In helping us make such a determination we are guided by the test developed by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). A penalty will be deemed to be punitive if it:

> (1) "involves an affirmative disability or restraint," (2) "has historically been regarded as a punishment," (3) requires a finding of scienter, and (4) promotes the "traditional aims of punishment — retribution and deterrence." To the extent "an alternative purpose to which [the sanction] may rationally be connected is assignable for it," the sanction need not be considered punitive, if it does not appear "excessive in relation to the alternative purpose assigned."

*Strong*, 158 Vt. at 60-61, 605 A.2d at 513 (citations omitted) (quoting *Kennedy*, 372 U.S. at 168-69).

■ Our analysis under the *Strong* factors indicates the non-punitive nature of the fine. First, the imposition of the fine does not have an impact on any constitutionally-protected rights or interests of landowner. Second, while we concede that some of our sister states have historically treated zoning violation fines as punishment, see 4 E. Ziegler, Rathkopf's The Law of Zoning and Planning § 45.01, at 45-10 (4th ed. 1997) (surveying numerous states' zoning laws and concluding that penalties provided for in zoning ordinance violations involve a punishment for infraction of the law), we have consistently declined to adopt such a view. See *Carpenter*, 155 Vt. at 133 n.*, 582 A.2d at 150 n.*. Third, § 4444 does not require a finding of scienter before a fine may be assessed. Fourth, the court's expressed purpose for imposing the fine, "remedial in nature, [was] designed to cover the costs of prosecution . . . ." We note that landowner does not contest the reasonableness or necessity of the Town's alleged costs. We conclude that the use of the fine provision in § 4444(a) to reimburse towns for

the cost of enforcement is contemplated by the statute and is rationally related to the damages suffered from landowner's violation of Town's bylaw. See *United States v. Halper*, 490 U.S. 435, 453 (1989) ("[T]he controlling circumstance is whether the civil penalty . . . bears any rational relation to the damages suffered by the Government.") (Kennedy, J., concurring).

■ Because the Legislature intended the fine authorized by § 4444 to be a civil penalty and the fine was not so punitive in nature or effect to negate the Legislature's intent, we conclude that landowner's constitutional rights were not violated.

## III.

Landowner also contends that the court abused its discretion by ordering the final amount of the fine to be based solely on Town's incurred attorney's fees and costs less $4000 — the cost to landowner of complying with the mandatory injunction — and limited to no more than $50 a day. Town cross-appeals claiming that the court abused its discretion by (1) reducing landowner's fine by $4000 — the estimated cost for landowner to comply with the mandatory injunction and (2) not allowing Town to recover its costs for its administrative and investigative costs. "A party who alleges an abuse of discretion has the difficult burden of demonstrating that abuse." *In re Norris Trust*, 143 Vt. 325, 327, 465 A.2d 1385, 1387 (1983). Furthermore, "[d]iscretionary rulings will not constitute grounds for reversal if there is a reasonable basis for the action of the trial court." *Id.*

■ In determining the amount of an assessed fine pursuant to § 4444(a), a court's discretion is limited by the criteria set forth in the statute and the constitutional requirement that the fine be civil in purpose and effect as discussed above. Section 4444(a) requires that (1) the maximum amount of the fine be fifty dollars for each offense, (2) each day the offense continues constitutes a separate offense, and (3) the fine is double for default of payment of the fine. The constitutional requirement mandates that a civil or remedial fine not be used to punish the violator. See *Halper*, 490 U.S. at 449.

■ Landowner contends that because there was no agreement between parties that attorney's fees and costs were recoverable and § 4444(a) does not expressly permit a court to award attorney's fees and costs, the court exceeded its authority by basing landowner's fine upon Town's attorney's fees and costs. The assessed fine, however,

was expressly limited to fifty dollars per day and remained well within the limits imposed by § 4444(a). Furthermore, because we conclude the Legislature intended that the fine be civil and therefore remedial in nature, determining the amount of the fine with regard to Town's attorney's fees and costs was reasonable.

Town contends that the court abused its discretion by deducting $4000 from the civil fine imposed against landowner to help defray his costs in attempting to comply with the permit conditions and not permitting it to recover administrative and investigative costs. Town relies heavily on *Halper*, and contends that an assessed fine must be designed to allow a town to recover all of its out-of-pocket expenses. *Halper*, however, recognizes that a precise determination of what will make the government whole again is sometimes "difficult, if not impossible, to ascertain," and therefore, "the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice." 490 U.S. at 449. More importantly, we read *Halper* as not dictating how a court must determine the amount of a fine but only requiring that a fine not constitute a second punishment in violation of the prohibition against double jeopardy. See *id.* Landowner stated that he had spent $4000 in his attempt to comply with the permit conditions and Town failed to contest this figure. Therefore, we find the $4000 deduction reasonable and the failure to award administrative and investigative costs to Town well within the broad discretion afforded the court in setting a fine pursuant to § 4444(a).

*Affirmed and remanded for determination of final amount of fine.*