# STATE OF VERMONT

# ENVIRONMENTAL COURT

Village of Ludlow, Plaintiff,           }
                                        }
v                                       }
                                        }   Docket No. 213-11-98 Vtec
                                        }
Kenneth Tofferi and Totem               }
Pole Ski Shop, Inc. Defendants.         }

Decision and Order on Penalty and Remaining Relief

Plaintiff Village is represented by J. Christopher Callahan, Esq.; Defendants are represented by Matthew T. Birmingham, III, Esq.; Intervenor George Dunnett represents himself. Prior related cases (Docket Nos. 132-8-96 and 133-8-96 Vtec) were decided by the Supreme Court in its Docket No. 1998-314 on May 4, 2001; the Superior Court case establishing the boundary between the Dunnett and Tofferi properties had also been concluded by the Supreme Court.

In its decision denying the variance for the new building in Docket No. 132-8-96, this Court had concluded that, considering the new building as an addition to an existing non-conforming structure, the addition was located partially within the 30 foot setback to West Hill Road and partially within the 20-foot west side setback to Intervenor's property, and could not be built unless it qualified for a variance. Section 370(5) of the Zoning Regulations prohibits nonconforming structures from being enlarged unless the enlarged portion conforms to the building requirements of the Zoning Regulations. After examining each of the five criteria that must be met for the building to qualify for a variance, the Court denied the variance because none of the five criteria was met.[1]

This Court's December 1999 decision decided the above-captioned enforcement action in favor of the Village, and granted injunctive relief for the removal of the building, to take effect after the Supreme Court would have resolved Defendants' appeal of the variance decision.

That decision found that construction of the new building had begun before the hearing date of July 23, 1997, when the variance decision was already on appeal to this Court, and continued after this Court's warning to Defendants that date that any construction would proceed at their own risk and that this Court would order the building removed if the variance were denied. The December 1999 decision concluded that the equities balanced in favor of removal of the building in this case. Under the terms of the December 1999 decision, the new building was to have been removed within 45 days after the Supreme Court's May 4, 2001 decision, or by June 18, 2001.

This Court's December 1999 decision also recognized that the calculation of an appropriate penalty should also await the Supreme Court's ruling on the variance decision, so that Defendant's cost of compliance and the Village's costs of obtaining enforcement could be taken into consideration. Town of Hinesburg v. Dunkling, 167 Vt. 514 (1998); Town of Sherburne v. Carpenter, 155 Vt. 126 (1990). Accordingly, after the Supreme Court's ruling, this Court

accepted memoranda from the parties regarding the calculation of the penalty and the return of remainder of a bond that had been posted. Those memoranda were filed in mid-July of 2001, with supporting affidavits, which disclosed that the building had not been removed by the June 18, 2001 deadline. On July 30, 2001, the Village moved for contempt and seeking direct authority to remove the building under V.R.C.P. 70, with a supporting affidavit that the building had not been removed as of July 17, 2001. A letter filed by Intervenor in August suggested that the building was in the process of being removed, but that there might be some disagreement among the parties as to the extent of the required removal. No further filings were received by the Court.

The length of the violation was more almost exactly four years, from mid-July of 1997 to some time after mid-July of 2001, although no party has supplied the final date of removal of the building, if it has occurred. The enforcement action was filed on November 20, 1998. The Village's costs of compliance have been presented in affidavit form as the Village's attorney's fees. Because of the pendency of the variance and conditional use permit appeals at the Supreme Court, we will only consider attorney's fees related to this enforcement action and not to those appeals. After sorting the bills into monthly sequence for each account provided, after reading each bill, after eliminating balances carried forward that appear on more than one bill, and after removing a total of $750 for the December 1999 - April 2001 period pertaining to the Supreme Court proceedings and pertaining to a press conference, we hereby find that the Village's attorney's fees attributable to this enforcement action total $2,286.70 (rounded to $2,287) for the period from August of 1998 through March of 1999; plus $3,060 for the period from December of 1999 through April of 2001; plus $670 for the period from May 2001 through July 23, 2001; for a total of $6,017.

The amount of Defendants' bond still on deposit, with interest accumulated to date, totals approximately $16,700. Defendants estimated that the removal of the building will cost approximately $50,000, although without any support for that estimate in the form of an affidavit or other evidence. It is also unclear to the Court whether that figure accounts for any salvage value of the materials of the removed building, such as display windows. However, by proceeding with construction while the variance was on appeal, and after being warned by the Court, Defendants undertook the risk that they might have to also bear the cost of removing that construction at a later date. Therefore, the cost of removal of the building should not be deducted from the penalty in the circumstances of this case.

Taking these factors into consideration, we impose a penalty as follows, noting that the penalty is required to be remedial rather than punitive in nature. Town of Hinesburg v. Dunkling, 167 Vt. 514 (1998). For the period from July 23, 1997, when Defendants were clearly warned of the risk of proceeding with construction of the building while the variance was on appeal, through June 18, 2001, when removal of the building should have been completed, a period of 1,425 days, we impose a penalty of $5 per day, for a total of $7,125. This relatively nominal daily amount covers the Village's costs of enforcement, yet recognizes that Defendants were vigorously pursuing their legal theory that the variance should be granted, that the enforcement action and the back boundary were also in litigation, and that Defendants were operating under this Court's orders preventing use of the portions of the new construction at issue in the variance decision. For the 29-day period from June 19, 2001 through July 17, 2001, during which the building had not been

removed even though this Court's December 1999 order clearly required removal by June 18, 2001, we impose an additional penalty of the maximum[2] of $50 per day as allowed under the Village of Ludlow Zoning Regulations, for an additional penalty of $1,450.

The fund on deposit in lieu of a bond is hereby released to be paid as follows: to the benefit of the Village in the amount of the total penalty of $8,575, and the balance of the fund to the benefit of Defendants, who are not restricted in any way in its use (that is, they may apply it to the costs of removal or to any other purpose). The fund shall be closed after the payments have been made.

In the event that the building was not removed as required; the Village's Motion for an order under V.R.C.P. 70 is hereby GRANTED to allow the Village to make arrangements for the removal, if it is still necessary. On or before February 1, 2002, the Village shall inform the Court whether such an order is still necessary and, if so, shall provide the Court with a proposed order by that date.

This decision and order concludes all remaining issues in the above-captioned case.

Dated at Barre, Vermont, this 18th day of January, 2002.


_____
Merideth Wright
Environmental Judge



**Footnotes**

[1.]    In that decision, the Court noted that from Defendants' point of view the proposal to build the new building and to tear down the old gas station building could have been a very good design to address the problem of access and parking on this small corner site and to improve its commercial potential, at least without regard to the commercial potential of Intervenor's neighboring business. However, the Court cautioned the Village that it could not use the variance procedure to compensate for deficiencies in the existing zoning regulations, and noted that a municipality which wishes to encourage new commercial construction and development within its central commercial area, to minimize problems of sprawl, must provide for such development in its zoning regulations, and has available to it such techniques as reduced setbacks, more intense lot coverage, or reduced parking, whether for parcels along certain streets or within some portion of the central commercial area, or for existing structures no matter what their changed use, or for corner lots. The Vermont Supreme Court reiterated this caution in its May 4, 2001 decision upholding the denial of the variance.

[2.]    The statutory maximum has been raised to $100/ per day, but a municipality must amend its zoning regulations to take advantage of that maximum. Ludlow does not appear to have done so.