STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| Town of Greensboro, Plaintiff | } | |
| v. | } | Docket No. 87-5-05 Vtec |
| Donna Lynn Pellegrini, Defendant | } | |
| | } | |
| | | |
| | } | |
| In re: Appeal of Pellegrini | } | Docket No. 157-8-05 Vtec |
| | } | |

Decision and Order

In Docket No. 157-8-05 Vtec, Appellant Donna Pellegrini appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Greensboro, denying conditional use approval for a guest apartment in a storage/workshop/garage building, and denying a variance for the sideline setback and height of the as-built building. In Docket No. 87-5-06 Vtec, the Town of Greensboro brought an enforcement action for construction of the building within the sideline setback and exceeding the allowed height. Defendant-Appellant is represented by Sharon Green, Esq.; the Town of Greensboro is represented by Sara Davies, Esq.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Defendant-Appellant owns a 6.6-acre parcel of land. Based on the parties' apparent agreement that the required side setback is 50 feet and the required lot size for a single-

1

family house is 10 acres, we assume it is in the Rural Lands district.  See, Town of Greensboro Zoning Bylaws (Bylaws), Art. VI.  The parcel appears to have been nonconforming as to lot size in the district at the time of her father's purchase of it in 1992. The parcel is approximately 741 feet in depth, from its southeasterly side at 160 Pellegrini Pike to its northwesterly side bounded by Route 16. Defendant-Appellant's father, Edward Pellegrini, had purchased the property in 1992, and had conveyed it to her at some time after the 1994 zoning permit at issue in this matter (as he is named on the 1994 permit application and appears to have signed it).  The Lamoille River flows across the lot approximately 200 feet from and roughly parallel to Route 16, dividing the lot; all the construction at issue in the present cases involves the area southerly of the river, on the Pellegrini Pike side of the lot.  Pellegrini Pike is a private road ending at Defendant-Appellant's property and serving only three residences.

An existing pond is located approximately in the center of the front portion of the property, between the house site and Pellegrini Pike.  Runoff from the pond flows in a northerly direction towards the river.  The primary building on the property is a single-family house located northwesterly of the pond, approximately 300 feet back from the road, with access by a gravel driveway running between the westerly side of the pond and the westerly side line of the property.  Northwesterly of the house site, the property slopes steeply down to the river.  A spring and the well serving the house are located northerly of the house site; this area is generally too wet for siting a building.

There is room on the property between the southeasterly side of the house and the northwesterly side of the pond for a 32' x 42' accessory building, containing a garage, workshop, and/or guest apartment, to be located in compliance with all the setbacks for the property, although it would be relatively close to and visible from the primary residence on the property.  There is also room on the property for such a building northerly of the pond and southerly of the pond.  These locations are shown generally on a diagram

2

appended to this decision.

In 1994, Edward Pellegrini applied for and received a zoning permit to construct a 30' x 60' "garage" building to be used for "storage & work shop," to be located 100 feet from one side line and 110 feet from the other, on the southwesterly side of the pond. The section of the application requiring a drawing of the floor plans showed two floor plans, one labeled "down" and one labeled "up." The 1994 application contained a sketched plot plan, drawn on a copy of the four-lot subdivision plot plan for this property, which also depicted a distance of 100 feet to the easterly side line, and a distance of 110 feet to the westerly side line. These measurements, taken together with the thirty-foot width of the proposed building, accounted for the 240 feet of frontage shown for the lot on the subdivision plot plan. The sketched plot plan showed the proposed garage building to be located between the southeasterly side of the pond and the southeasterly boundary of the property.

At the time of that application and under the current bylaws, the required side line setback was and is 50 feet, and the building height limitation was and is 35 feet above average ground level. Bylaws Art. VI, §5(b)(2)(c) and Art. II, §4(d). The minimum lot size in the Rural Lands district is ten acres. Bylaws Art. VI, §5(b)(1). A single-family dwelling is a permitted use in the district, Bylaws Art. VI, §§3(b), while 'accessory apartments' and 'guest house' are conditional uses. Bylaws Art. VI, §(4)(d) and (a). Accessory apartments (as defined by reference to the former state statute[1]) are allowed to be located in an accessory building. Guest houses are allowed to be constructed, without such dwelling units being considered a second primary dwelling, if they are limited in area to 500 square

_____

[1] Bylaws, Art. XII. The definition incorporates by reference the state statutory provisions in the former versions of 24 V.S.A. §4406(4)(D) and 4302(11)(D). The state statute in effect since July 1, 2004 requires municipalities to allow one accessory dwelling unit, with the limitations found in 24 V.S.A. §4412(1)(E) and (F).

3

feet (if one story) or to 750 square feet (if two story).[2]

The permit stated that it would be void in the event of failing to undertake construction within one year or to complete construction within two years; nevertheless, the building was not constructed until approximately 1998. It measures 32' x 42' and is built into the slope of the land, so that it consists of a walk-out basement level, one full floor level above the basement, an attic level within the slope of the roof, with a dormer, containing the proposed apartment, and a cupola level surrounded by windows.[3] The closest corner of the building is located 15.9 feet from the southeasterly side line. The peak of the cupola roof is 51.1 feet above the top of the building's concrete slab at the front of the building, making the building approximately 49 feet high as building height is required to be measured under the Bylaws.[4] The peak of the attic roof is 37 feet above top of the building's concrete slab at the front of the building, making the building height well below

---

[2] Bylaws Art. XII and Art. II, §3(d). The ZBA seems to have treated the proposed apartment in the garage building as a 'guest house' rather than as an 'accessory apartment.' It appears from reading the definitions together that if the main residence were to be owner-occupied, the apartment could qualify as an accessory apartment but not as a guest house, as it is not a free-standing building and is not proposed to be used for non-paying guests for less than 120 days in a year, but is rather proposed to be rented out.

[3] The Town alleges and Defendant-Appellant does not contest that the cupola level has a floor and contains a room, rather than simply letting light into and being open to the sloped attic level.

[4] The definition of the term "Building Height" (Bylaws Art. XII) requires the average ground elevation to be calculated as the average elevation of the finished grade at the front of the building, which in the present case is the side of the building facing the gravel drive and having the three garage doors. Whether measuring the height of the building with the cupola as it now exists, or measuring the height of the building without the cupola, under that definition it is supposed to be measured to the average height between the eaves and the ridge of the roof; however, the measurement to the eaves has not been provided in evidence so that the building height is merely estimated here.

4

the 35-foot height limit without the cupola, given the apparent slope of the attic roof. Accordingly, the removal of the cupola would bring the building into conformance with the height limit.

The Town asserts that the in-ground septic leach field serving the building is located at least in part on the neighboring owner's land. The neighboring owner did not enter an appearance in the case and did not testify as a witness. From the evidence presented, the court cannot find that the septic system is located beyond Defendant-Appellant's property. If it is, even though it would be a violation of the permit, which shows it to be located within Defendant-Appellant's property, as it was not the subject of the 2005 notice of violation it therefore is not within the scope of the present enforcement action.

At some time by March of 2001, Defendant-Appellant had converted the space in the attic level and cupola of the building to use as an apartment which was 850 square feet in area. Although the Bylaws allow an accessory apartment to be created within an accessory building already approved for other uses, both parties in this case have treated the application as if it would fall within the 750-square-foot limitation for a two-story guest house.

On March 21, 2001, the Zoning Administrator issued a notice of violation to Defendant-Appellant advising her of the following violations: that the creation of the apartment violated the Article II, §3(d) provisions of the Bylaws for a guest house; that the apartment exceeded the square footage limitations for a guest house and therefore also violated the Article II, §3(a) provisions of the Bylaws (restricting lots to no more than one primary structure); and that the creation of the apartment also violated the conditions of the 1990 state subdivision permit[5] issued by the Agency of Natural Resources.

---

[5] Both Art. II, §3(d) and the definition of "guest house" in Art. XII of the Bylaws require the on-site septic system for a guest house to be designed by a certified site technician. While a state subdivision permit may be used to satisfy that requirement,

Defendant-Appellant did not appeal the issuance of this notice of violation and therefore she cannot contest the existence of the violations stated in that notice. 24 V.S.A. §4472(d). Rather, she sought to remedy the violation by applying on March 30, 2001 for conditional use approval for the apartment, described as a "guest house in existing building." The use of the existing building was described as a "shop," and the application repeated the 100-foot and 110-foot side setback measurements from the initial application for the building, although it described the size as 32' x 42', which the parties do not contest is the as-built footprint of the building.

The ZBA conducted a site visit as well as a hearing in connection with the 2001 conditional use application, and denied the application because the building's septic system had never received approval, because the height of the building exceeded the maximum limits, and because the square footage of the apartment exceeded the limitation of 750 square feet for a guesthouse of more than one story, taken together with the fact that the property lacks enough acreage for a second residence. At that time the apartment was about three-quarters completed and included a full bath. After the application was denied, Defendant-Appellant stopped improving the building for use as an apartment and the apartment space has not been used for living purposes. If the apartment is approved, Defendant-Appellant proposes to rent it out.

Defendant-Appellant did not appeal the 2001 denial to Environmental Court; she argued to the ZBA in the 2005 hearing that the 2001 application had been withdrawn due to a possible problem with the septic system for the building.

In late January and early February of 2005, the Zoning Administrator visited the property to determine whether there were violations of the side setback and of the location

nothing else in the Zoning Bylaws appears to make a state subdivision permit enforceable by the Town. No related enforcement case has been filed in this court by the state Agency of Natural Resources seeking enforcement of that subdivision permit.

6

of the leach field for the building, based upon information received from the adjoining property owner. Based on that inspection, the Zoning Administrator issued a new Notice of Violation on February 15, 2005, asserting the following four violations: that the apartment had been established in the building without a permit; that the building contains four floors although the 1994 zoning permit was for only two floors; that the building exceeds the height limit; and that as constructed it "is located within 25-30 feet of" the adjoining property, in violation of the 1994 zoning permit "which provided for a set back of at least 100 feet" and in violation of the setback requirements of the Zoning Bylaws.

Defendant-Appellant did not appeal the issuance of this notice of violation, and therefore she cannot contest the existence of the violations stated in that notice. 24 V.S.A. §4472(d). Rather, she sought to remedy the violation by again applying, on May 19, 2005, for conditional use approval for the apartment, as well as for a variance. The variance request makes reference to the "letter dated 2-15-05 from [the] Town" and appears to request variances to allow the so-called guest house to have its actual size of 850 square feet rather than the 750 square feet referred to in the 2005 Notice of Violation for a two-story guest house, to allow the "actual" height[6] (stated in the variance application as 41 feet) rather than the 35-foot maximum height in the Bylaws, and to allow the "actual" side yard setback (stated in the variance application as 35 feet) rather than the 50-foot minimum required by the Bylaws. The variance request also asserts that the "garage/apartment has only two floors - balance of construction is in roof area," from which it is difficult to determine whether Defendant-Appellant sought to argue that the building should not be

---

[6]  Article II, §4(d) of the Bylaws allows an applicant to apply for approval of additional height for a building, but such application must be made both to the ZBA and to the Planning Commission. Defendant-Appellant never applied to either of those municipal panels for approval of the excess height under this provision in the Bylaws (as opposed to applying for it as a variance).

7

considered to be more than two stories, or sought to request a variance from the two-story limitation asserted by the Town.

The ZBA denied the application for variance on the basis that the application did not meet any of the required criteria for a variance, without making findings to specify in what respects the application failed those criteria. The ZBA did not address the conditional use standards for the apartment other than to state that the ZBA needed to determine whether there are any facts substantially different from the 2001 application to warrant a subsequent application.

The accessory building is in violation of its permit and the Bylaws as being closer to the side property line than the required 50- foot setback.

The accessory building cannot qualify for a variance from the side setback because there are several areas on the lot on which the building could have been built, or to which the building could potentially be moved, that would completely comply with the dimensional requirements of the Bylaws, without being affected by the topography or the wetness of the lot in the areas closer to the river or behind the house. The accessory building therefore fails to meet subsections 1 and 2 of 24 V.S.A. §4469(a). Moreover, by building the building too close to the side line, Defendant-Appellant (or her predecessor) created the hardship for which she now seeks a variance, in violation of subsection 3 of 24 V.S.A. §4469(a).

Defendant-Appellant is free to cure the violation by any means she chooses, including by obtaining a permit to move the building or to rebuild it on a complying site on the property, or by taking it down, or by obtaining additional property to meet the required sideline setback.

The accessory building also is in violation of its permit and the Bylaws as having a building height higher than the 35-foot limitation. However, Art. II, §4(d) of the Bylaws

8

allows an application to be made to the ZBA and the Planning Commission for approval of additional height, "providing such an increase will not be disruptive to its surroundings and providing it does not constitute a hazard." No such application has been made in the present case, and therefore the Court does not have such an application to rule on. It is possible that if the building is moved or rebuilt, or if additional property is acquired to meet the side setback requirements, that such an application could result in approval of the additional height of the cupola. The Court would consider waiver of the filing fee if any such future application were to result in a new appeal.

In its present location, the accessory building cannot qualify for a variance from the height requirement of the Bylaws because, by building the building to that height, Defendant-Appellant (or her predecessor) created the hardship for which she now seeks a variance, in violation of subsection 3 of 24 V.S.A. §4469(a). The height violation could be cured by removal of the cupola, but it would have no effect on the continuing existence of the setback violation in that location.

As contrasted with the requirements for building height, nothing in the Zoning Bylaws limits the number of stories a building may have. The 1994 permit application did not require the applicant to state the number of stories for the proposed building. Further, in the sketch plan section, the 1994 permit application did not clearly require the applicant to provide a floor plan of each story; rather, the form merely required "both upstairs and downstairs," that is, two floor plans, "if there is more than one floor." Therefore the fact that the building has two-and-a-half stories (or perhaps two-and-three-quarters, depending on how the cupola and the dormer are counted) does not constitute a violation of the original permit, or of the Bylaws. Permit conditions, as well as land use regulations, must be construed by resolving any uncertainty in favor of the property owner. Agency of Natural Resources v. Weston, 175 Vt. 573, 577 (Vt. 2003); In re: Appeal of Weeks, 167 Vt. 551, 555 (Vt. 1998).

9

It is possible that, if the building is moved or rebuilt, or if additional property is acquired to meet the side setback requirements, Defendant-Appellant could qualify for approval of the apartment. A new application would have to be made for such approval in its new location, or after the side setback requirements had been met. If the primary residence on the property is owner-occupied, then the apartment may qualify for approval as an accessory dwelling unit under 24 V.S.A. §4412(E), if it meets the requirement of not exceeding 30% of the total habitable floor area of the primary residence, and if there is adequate sewage disposal for the apartment in its new location or by connecting it to the system serving the primary residence. If, on the other hand, the apartment is intended to be used for non-paying guests for no more than 120 days per year, it may qualify for approval if it meets the septic system requirements of the definition of "Guest house" in the Bylaws and is reduced in size to the maximum of 750 square feet.

The setback and height violations existed from the construction of the building to the present. However, the Town did not bring an enforcement action based on the notice of violation issued in 2001. The applicable statutory section as it then existed was 24 V.S.A. §4444(a), which allowed a municipality to bring an enforcement action without a new notice of violation within the twelve months following the issuance of the notice of violation. Therefore we look at the potential for a penalty dating from March 2, 2005, with reference to the 2005 notice of violation. To the date of trial, that time period was 420 days. Because Defendant-Appellant's costs of coming into compliance will be expensive, no matter how she may choose to carry it out, it will be sufficient in this matter to impose an additional penalty of $15.00 per day, for a total of $6,300, to compensate the Town for its costs of obtaining compliance, including its surveying fees and its attorney's fees. See, Town of Hinesburg v.Dunkling, 167 Vt. 514, 528–29 (1998).

10

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the requested variances are DENIED, and the application for approval of the apartment within the building in its present location is DENIED, without prejudice. Defendant-Appellant shall cure the setback violation, in compliance with the following schedule. On or before February 15, 2007, Defendant-Appellant shall report to the Court in writing the arrangements she has made to cure the side setback violation, whether by moving the building to or rebuilding it on a complying site on the property, or by taking it down, or by obtaining additional property to meet the required sideline setback, or by any other means. On or before March 1, 2007, Defendant-Appellant shall report to the Court in writing the arrangements she has made cure the height violation, and shall file any required applications for approval of the additional height and for approval of any new location for the building if it is proposed to be moved or rebuilt on the property. If Defendant-Appellant has failed to make such arrangements by that date, the Town may apply for an order under V.R.C.P. 70 to have a person appointed to take any necessary action. In addition, Defendant-Appellant shall pay a penalty of $6,300 as calculated above; the parties may make their own arrangements or apply to the Court for a schedule of payments over time.

Dated at Berlin, Vermont, this 7th day of November, 2006.

_____

Merideth Wright
Environmental Judge