STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 74-5-14 Vtec |
|---|---|
| Town of Ludlow,<br>    Plaintiff<br><br>        v.<br><br>Allen Thomas,<br>    Defendant | DECISION ON THE MERITS |

Before us is the Town of Ludlow's May 27, 2014 Enforcement Complaint and request for Injunctive Relief (Complaint) alleging that Allen Thomas (Mr. Thomas) has multiple violations of the Town's Ordinance Regulating Outdoor Storage of Junk and Junk Vehicles on his property at 54 Soapstone Road in Ludlow, Vermont (the Town). On November 5, 2013 the Town notified Mr. Thomas of the alleged violations in a Notice of Violation. The Complaint alleges that Mr. Thomas has not remedied any of the multiple violations noticed by the Town nor appealed the Notice of Violation.

In connection with the trial in this matter, the Court conducted a site visit on September 30, 2014 during which Mr. Thomas's property was viewed from the vantage of Soapstone Road and neighboring property owner Laura Wyman's driveway. The site visit was followed by a one day merits hearing held at the Windsor County Civil Division courthouse in Woodstock, Vermont. Appearing at the site visit and hearing were Allen Thomas representing himself; Attorney Christopher J. Callahan, Esq. representing the Town of Ludlow; Mr. Frank Heald, the Town of Ludlow Municipal Manager; and neighbors Laura Wyman and Jessica Liberties.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1.      Allen Thomas currently resides at his farm at 3982 Route 30, Sudbury, Vermont.

1

2. Mr. Thomas owns additional real property and improvements at 54 Soapstone Road, Ludlow, Vermont (the Property).

3. Mr. Thomas was born in Proctorsville, Vermont and is a third generation farmer.

4. When he was three years old, Mr. Thomas and his family moved to the Property.

5. Mr. Thomas relocated to Sudbury approximately 47 years ago.

6. There are two mobile homes at the Property.

7. The mobile homes are rented to third parties. Rent is paid monthly to Mr. Thomas in the amount of $435 for each home.

8. Jessica Liberties is one of the tenants of the mobile homes at the Property. Ms. Liberties has children that reside with her at the Property.

9. There are structures at the Property located behind the mobile homes.

10. A garage is the larger of these structures. It houses three automobiles. The automobiles are unregistered and have not been driven for over five years.

11. A second structure, located in the area of the garage, appears to be a collapsed mobile home. Prior to its collapse about 10 years ago, this structure was positioned closer to Soapstone Road. At that time, the structure appeared to be used as a residence.

12. Mr. Thomas referred to the collapsed structure as a chicken coop, although there are no chickens on the Property and Mr. Thomas could not remember the last time that there were any.

13. There are one or more storage sheds behind the mobile homes, which appear to be filled with items.

14. There is also a boat located next to the garage. It is sitting on the ground rather than on a trailer.

15. There are light colored tarps covering objects stored in the area of the garage, boat, and collapsed structure.

16. Mr. Thomas would not permit Town representatives, neighbors, or the Court to enter his property to perform a closer observation of the many items stored on the property, under tarps or within the structures.

17. Nothing would prevent a child from walking and playing on or in the items stored at the Property.

18. Laura Wyman owns and resides at 6 Soapstone Road, a parcel adjacent to the Property.

19. Ms. Wyman has lived at 6 Soapstone Road for 21 years.

20. As shown in Exhibit C, there are clear unobstructed views of the Property, including the structures, the boat, and all the various objects, from Ms. Wyman's bedroom window.

21. Frank Heald has been the municipal manager of the Town of Ludlow for the past 12 years.

22. On or about November 5, 2013, Mr. Heald sent Mr. Thomas a letter alleging a violation of the Town's Ordinance Regulating Outdoor Storage of Junk and Junk Vehicles (Ordinance). The Town's Ordinance was enclosed with this letter.

23. Mr. Thomas received the November 5 Notice of Violation letter from the Town.

24. The Town sent several letters to Mr. Thomas in addition to the November 5 letter asking for voluntary clean-up of the Property.

25. The Town of Ludlow has incurred approximately $3,000 in legal fees in attempting to bring the Property into compliance with the Ordinance. The Town also paid $262.50 in filing fees and incurred costs of service.

26. Mr. Thomas has an active farming operation at his Sudbury, Vermont property. This 66 acre farm at one time was an active livestock farm; however, currently it is primarily a hay crop farm.

27. Mr. Thomas has several farm vehicles and pieces of farm equipment. He has 100 taps in a sugar bush in Sudbury.

28. The farm vehicles are not used at the Property and there are no maple sugaring activities at the Property.

29. Mr. Thomas testified that he might use some of the wood or scrap metal that is presented stored at the Property on his farm in Sudbury.

## Conclusions of Law

3

The Ordinance prohibits the storage of "junk" and "junk vehicles" in a place where it is visible from the traveled way of a highway or town road, or visible to an abutting landowner from a portion of the abutter's land used on a regular basis. Ordinance § 3.01. "Junk" is defined as "old or discarded scrap copper, brass, iron, steel or other metals, or materials including but not limited to tires, household appliances, furniture, rope, rags, batteries, glass, rubber debris, waste, trash, construction debris, plumbing fixtures, or any discarded, dismantled, wrecked, scrapped, or ruined motor vehicle or parts thereof." Ordinance § 2.06. Items used in a bona fide agricultural operation are excluded from the definition of "junk." Id. If junk is stored on property within the Town, upon notice from the Town, the owner of the property is required to either remove the junk from the property or screen the items from the view of the traveled way or from view of an abutting landowner, as seen from an area of the abutters land used on a regular basis. Ordinance § 4.01.

**Violation**

Based on credible testimony and evidence, we conclude that there is a considerable volume of items meeting the definition of "junk" on the Property. There may also be junk vehicles on the property, however, as Mr. Thomas would not permit an on-site inspection, we cannot confirm or rule out this possibility. The junk can be seen from the traveled way of Soapstone Road, a town road, and it is visible from Ms. Wyman's bedroom window. Mr. Thomas argues that he is a farmer and that the items at the Property might be used in his bona fide agricultural operation, which he undertakes at his Sudbury property. For this reason, Mr. Thomas suggests that these items are excluded from the definition of junk.

The Ordinance and its definition of junk exclude items used in a bona fide agricultural operation. Ordinance § 2.06 (emphasis added). Mr. Thomas suggests that the Ordinance definition of junk should be interpreted to exclude items that could be used in an agricultural operation. We interpret zoning ordinances using the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. Where the plain meaning of the ordinance is clear it must be enforced and no further

4

interpretation is necessary.  <u>Vermont Alliance of Nonprofit Orgs. v. City of Burlington</u>, 2004 VT 57, ¶ 6, 177 Vt. 47 (citing <u>Hill v. Conway</u>, 143 Vt. 91, 93 (1983)).

The Ordinance clearly exempts any of the items listed in the definition of junk that are "used in a bona fide agricultural operation."  Vermont's Right to Farm Law, 12 V.S.A. § 5752 defines agricultural activity as follows:

> For the purpose of this chapter: "Agricultural activity" means, but is not limited to:
> (1) the cultivation or other use of land for producing food, fiber, Christmas trees, maple sap, or horticultural and orchard crops; the raising, feeding, or management of domestic animals as defined in 6 V.S.A. § 1151 or bees; the operation of greenhouses; the production of maple syrup; the on-site storage, preparation, and sale of agricultural products principally produced on the farm; and the on-site production of fuel or power from agricultural products or wastes principally produced on the farm;
> (2) the preparation, tilling, fertilization, planting, protection, irrigation, and harvesting of crops; the composting of material principally produced by the farm or to be used at least in part on the farm; the ditching and subsurface drainage of farm fields and the construction of farm ponds; the handling of livestock wastes and byproducts; and the on-site storage and application of agricultural inputs, including lime, fertilizer, and pesticides.

With these principles in mind, we conclude that Mr. Thomas's use of the Property cannot be considered an agricultural operation nor can the items stored on the property be considered as items used in an agricultural operation.  As such, Mr. Thomas's construction of the Ordinance goes contrary to the language of the Ordinance and would lead to an overly expansive exemption to the plain meaning definition of junk.  Thus, the items are junk, and possibly junk vehicles, and are being stored in violation of the Town's Ordinance.

### Injunctive Remedy

If junk is stored on property within the Town, upon notice from the Town, the owner of the property is required to either remove the junk from the property or screen the items from the view of the traveled way or from view of an abutting landowner, as seen from an area of the abutters land used on a regular basis.  Ordinance § 4.01.

On November 5, 2003, the Town served the Notice of Violation (NOV) upon Mr. Thomas relating to the outdoor storage of junk and junk vehicles.  Thus, Mr. Thomas was on notice of the violations of the Ordinance and has failed to come into compliance with the Ordinance. Due to the location of Ms. Wymann's property, which is immediately adjacent and at a higher

5

elevation than Mr. Thomas's, an order requiring Mr. Thomas to screen the items from view would be impracticable. The Town's Complaint for enforcement therefore seeks an injunction requiring Mr. Thomas to remove the offending junk and junk vehicles from the Property.

When a municipality seeks an injunction, the Court asks first whether the violation is substantial, and second, whether the landowner's violation is innocent or involves conscious wrongdoing. See Town of Shelburne v. Carpenter, 155 Vt. 126, 131–32 (1990). The municipality does not have to show irreparable harm or the lack of an adequate alternative remedy to obtain an injunction; the showing of a violation is sufficient. Id. at 129.

The issue of whether the violation is substantial entails the difficult weighing of the public injury against the private loss. The Vermont Supreme Court has noted that there comes a point where the violation is so insubstantial that it would be unjust and inequitable to require action through a mandatory injunction. See id. at 131. Based upon the evidence in this matter, and as set forth in the above findings of fact, Mr. Thomas' violation of the Town's Ordinance Regulating Outdoor Storage of Junk and Junk Vehicles is substantial. There is considerable junk, and possibly junk vehicles, being stored on the Property without screening and in close proximity to the renters, including children, on the Property

In reviewing whether the violation is innocent or conscious wrongdoing, courts have generally found that a conscious decision to go forward, in the face of a direction not to from the regulatory body, is not innocent. Id. at 132. The Town has had considerable communication with Mr. Thomas regarding his need to remove or screen the junk. Thus, there is no possibility of an innocent violation at this time.

We therefore **GRANT** the Town an injunction and **ORDER** that Mr. Thomas immediately take action to remove all junk and junk vehicles at his Soapstone Road property. The removal shall be completed within 60 days of this decision.

### Penalties

The Town's requests penalties against Mr. Thomas for his violation. Vermont municipalities are authorized to demand that a violator pay a fine each day the violation continues. 24 V.S.A. § 4451(a). The municipality is required to give prior notice and an

opportunity to cure of "at least seven days' warning notice by certified mail." Id. This Court is charged with determining what level of fine should be assessed against the zoning violator. Id.

Section 4451(a) provides us with some parameters for an appropriate penalty by establishing that this Court may impose a penalty of "not more than $200.00 per day for each offense." We have held that this provision implies that "we reserve a fine of $200.00 per day for the most egregious of zoning infractions." In re Huntington NOV Appeal and Town of Bradford v. Huntington, Nos. 204-8-06 Vtec and 209-9-06 Vtec, slip op. at 8 (Vt. Envtl. Ct. Mar. 18, 2008) (Durkin, J.); see also Town of Hinesburg v. Dunkling, 167 Vt. 514 (1998). Fines authorized by 24 V.S.A § 4451(a) are civil in nature; they must not be punitive and they must be "rationally related to the damages suffered from landowner's violation of [the] Town's bylaw." Id. at 528. It is clear that the Town has incurred considerable expense, including expenditures for both legal services and staff time and resources, to compel Mr. Thomas's compliance, and that Mr. Thomas's continued non-compliance puts neighboring properties and people at some safety risks.

Therefore, even in light of the injunctive relief requiring Mr. Thomas to remove the junk and junk vehicles from the Property, we conclude that in this instance a fine of $10.00 per day is appropriate. The Town's NOV was served via first class mail on November 5, 2013. Adding three days for US Mail service pursuant to V.R.C.P. 6(e) results in the seven day cure period expiring on or about November 8, 2013. We calculate a total of 446 days between November 8, 2013 and today. Thus, we assess a total fine against Mr. Thomas of $4,460.00. This fine assessment will reimburse the Town for costs and expenditures in response to the violation.

### Conclusion

For the reasons discussed above, we conclude that:

1. The items at Mr. Thomas' Soapstone Road Property are junk and junk vehicles and are being stored in violation of the Town's Ordinance.

2. The November 5, 2013 Notice of Violation is **AFFIRMED**.

3. We **GRANT** the Town an injunction and **ORDER** that Applicant immediately remove the junk and junk vehicles within 60 days of this decision.

4.  As a consequence of committing the violations, Mr. Thomas shall pay to the Town of Ludlow a fine in the total amount of $ 4,460.00 within 30 days of this Order.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Electronically signed on January 28, 2015 at 11:50 AM pursuant to V.R.E.F. 7(d).

_Tom Walsh_
_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division