# STATE OF VERMONT

# ENVIRONMENTAL COURT

Town of Waitsfield, Plaintiff,

}
}
v                                          }   Docket No. 125-8-01 Vtec
}
}
Ira and Martha Jackson,                      }
Defendants

## Decision and Order on Motions to Strike and for Summary Judgment

In Docket No. 125-8-01 Vtec, the Town brought an enforcement action against Defendants Ira and Martha Jackson. In an earlier case, Docket No. 186-9-00 Vtec, Ira and Martha Jackson appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Waitsfield upholding the Zoning Administrator's Notice of Violation and decision disapproving their as-built application, dismissing their application under § V(9) of the Zoning Ordinance, and denying their applications under §§ IV(4) and (5). The two matters had been consolidated as of the April 23, 2002 decision on the merits of the appeal, which concluded the appeal in this Court and remanded[1] it to the ZBA to consider the application for amendment to the 1998 stream setback reduction order for the as-built project, and for the Zoning Administrator thereafter to act on the application for amendment to the 1998 zoning permit. After the Court issued its April 23, 2002 decision on the merits of the appeal, including the determination that the watercourse was a stream, the two cases were severed.

The parties have submitted this enforcement case by cross-motions for summary judgment. Defendants are represented by Carl H. Lisman, Esq., Christina A. Jensen, Esq. and Peter S. Sidel; the Town is represented by Steven F. Stitzel, Esq. and Amanda S.E. Lafferty, Esq.

Motion to Strike

The Town asks the Court to strike a supplementary affidavit from Peter Jackson, Defendants' Connecticut-based architect who spoke with the Zoning Administrator by telephone in June of 1999. Defendants filed the affidavit of Peter Jackson after the Town argued correctly that Martha Jackson's own affidavit about the conversation between Peter Jackson and the then-Zoning Administrator Andrew Flagg could not be considered as it was not based on her own personal knowledge. However, just as the Court may take evidence at a hearing on a motion for summary judgment, Bingham v. Tenney, 154 Vt. 96 (1990), for the purpose of determining whether a material fact is disputed, the Court may permit the supplementation of the affidavits for the same purpose. Therefore, the Town's Motion to Strike is DENIED; the Court will consider the affidavit of Peter Jackson as an indication of what he would testify to at trial. After all, the purpose of summary judgment is to avoid an unnecessary trial; if there is a genuine issue of material fact a trial is necessary, at least as to that issue.

However, a summary judgment motion is not a trial of the underlying merits of the case on the basis of conflicting affidavits; nor is it for the trial judge to adjudicate who is more credible on the basis of affidavits. See, e.g., Pierce v Riggs, 149 Vt. 136 (1987). If the affidavits and other material in the record establish that facts are disputed only on limited issues in the case, partial summary judgment is available, V.R.C.P. 56(d), to eliminate those issues dependent only on undisputed facts, leaving the remaining issues for trial. See, Berlin Development Associates v. Department of Social Welfare, 142 Vt. 107, 112 (1982). In the present case, we have had a trial that resolved all of the fact and legal issues in Docket No. 186-9-00 Vtec. That case has been severed from this one; we turn to the present motions for summary judgment.

Motions for Summary Judgment

The following facts are undisputed unless otherwise noted, or have been resolved in the decisions already issued in the consolidated cases.

Defendants own property, including a single-family residence and what was an existing 18' x 30' shed or barn, at 914 Main Street in the Agricultural/Residential zoning district of the Town of Waitsfield. A watercourse[2] traverses the property at a distance of from 12 to 26 feet from the rear of the then-existing barn.

In August of 1998, Defendants applied to the Town to disassemble the existing barn, to salvage and reuse its material as much as possible, and to construct a 30' x 30' structure, using the same rear and side wall locations. The permit application refers to the proposed structure as a " barn/garage;" the space on the application for " land or building use" is filled in as " residential." The maximum height of the proposed structure is shown on the application as " 24'." The application included a front elevation and a side elevation of the proposed structure, showing its height as 24', its footprint as 30' x 30', a roof overhang of 1' on each side, and a 5' x 6' central shuttered opening in the gable end, with an apparent but unlabeled attic floor line at 9 feet above the finished floor elevation.

In November of 1998 the ZBA approved Defendants' application to reduce the required stream setback to that of the existing rear wall of the then-existing barn " as indicated on the applicant' s plans (September 29, 1998)." The ZBA specifically issued this approval under the authority of § V(9) of the Zoning Ordinance, which allows the ZBA to reduce the required stream setback upon a finding that the reduced setback would " not adversely affect water quality or scenic beauty," and not under § IV(4) governing ordinary (24 V.S.A. § 4468) variances. This decision was not appealed and became final. Based on it the Zoning Administrator then granted the zoning permit for the new 30' x 30' barn/garage, with the same rear and side wall locations as the then-existing barn, in late November of 1998. The zoning permit also was not appealed and became final.

In its decisions in the consolidated cases, the Court ruled that under the 1998 approvals, Defendants held a zoning permit for a 24-foot-high structure, on a 30' x 30' footprint, with a one-foot roof overhang, for use as a barn/garage, in connection with the residential use of the property.

After obtaining these approvals and before construction, Defendants decided to alter the design originally proposed. Defendant Ira Jackson' s brother Peter Jackson, a Connecticut architect, discussed the proposed modifications by telephone with the Zoning Administrator, on June 9, 1999. The parties dispute the content of that discussion. They dispute the extent to which those witnesses discussed the addition of plumbing or a toilet to the building, and whether such a change would be acceptable as long as it was plumbed into the septic system of the house and did not include a floor drain. They dispute whether the Zoning Administrator orally advised the architect that the modified building would be approved upon submission of as-built plans and payment of an additional fee following construction.

That oral discussion was not and could not have been a ' permit' superseding the 1998 permit. However, material facts are in dispute as to Defendants' knowledge and state of mind as of the summer of 1999, and as to the Town' s imputed knowledge. These disputed facts are material to Defendants' argument that the Town should be estopped from seeking removal of the as-built structure to the extent it differs from the 1998 approvals, or from obtaining a penalty for the construction of the as-built structure. Even in the absence of true estoppel, these disputed facts are material to the factors the Court must consider in determining the extent of injunctive relief or the amount of any penalty. In re Jewell, 169 Vt. 604, 606-07 (1999); In re Letourneau,168 Vt. 539 (1998, as corrected 1999); Town of Hinesburg v. Dunkling, 167 Vt. 514 (1998); Town of Sherburne v. Carpenter, 155 Vt. 126 (1990).

At some time after the June 9, 1999 telephone conversation, Defendants constructed the new structure in the approved 30' x 30' footprint[3], but with two full stories and a balcony, changing the height to approximately 34 feet 6 inches. Defendants added a bathroom with plumbing but no floor drain, plumbed into the existing septic system. The construction used all new materials.

The Court has already determined that Defendants built the altered project[4] without obtaining prior approval of the changes in the design from the 1998 approvals; and that they should have applied for an amendment to their zoning permit (both for the changes in the structure and for any change in use beyond its use for a garage and storage (even if the changed use is also a permitted use)); and that they should have applied for an amendment to their § V(9) stream setback approval (in which they would have had to show that the larger building in the same footprint also would " not adversely affect water quality or scenic beauty." )

However, the consolidated cases also dealt with the ZBA' s action on Defendants' later-submitted applications for approval of the as-built construction. Defendants applied in October of 1999 to the Zoning Administrator for a zoning permit for the as-built structure. Defendants applied on November 12, 1999, to the ZBA to amend the 1998 stream setback reduction order under § V(9) for the as-built structure (as well as appealing to the ZBA the Zoning Administrator' s denial of the zoning permit and issuance of a notice of violation for the as-built structure).

This Court has already ruled that the ZBA should have acted on Defendants' application to amend the 1998 stream setback reduction order under § V(9)(A), rather than dismissing it. This Court has already ruled that the Zoning Administrator should have waited for the ZBA' s § V(9)(A) ruling before acting on Defendants' as-built zoning permit amendment application. This

Court has remanded the matter to the ZBA and Zoning Administrator for those actions to occur; however, as discussed in footnote 1 above, the remand remains on hold pending the Supreme Court appeal of that decision.

Everything since the ZBA's actions on the November 12, 1999 application has been contested by the parties. The Town's complaint in the present case requests injunctive relief requiring Defendants to remove the second story and the balcony of the structure, and to remove the "portion of the structure that intrudes into the setback of the stream further" than permitted by the 1998 approvals, and to "use the structure only in accordance with Town approvals and permits." It also requests substantial penalties to cover its costs and attorneys fees in the consolidated cases.

In the October 2001 summary judgment order in the consolidated cases, the Court ruled that material facts then remained in dispute as to whether the Town should be estopped from enforcement based upon representations of the Zoning Administrator in the period between issuance of the 1998 approvals and the construction of the changed project. Those material facts remain in dispute as to the states of mind of Defendants' representative Peter Jackson and the Town's representative in the person of the then-Zoning Administrator. Those material facts are equally material to the determination of any injunctive relief and penalty amount, even in the absence of estoppel. Summary judgment is generally inappropriate in "cases in which the resolution of the dispositive issue requires determination of a state of mind," as the fact finder normally should be given the opportunity to observe the demeanor and determine the credibility of the witnesses whose state of mind is at issue, and the other parties should be allowed to probe the perceptions and motivations of those witnesses at trial. Barbagallo v. Gregory, 150 Vt. 653 (1988).

More importantly, however, until and unless the Supreme Court appeals are resolved on the issues of whether the watercourse is a stream and whether a conditional use permit or a 24 V.S.A. § 4468-type of variance was required for the as-built construction, and until the Zoning Administrator and ZBA rule on the remanded issues and all appeals of those rulings are resolved, it is simply premature to address most of the issues in this enforcement action. That is, we will not be able to tell the duration of any of the violations, or the other factors to be considered in equitable relief or in assessing a penalty, until those issues are resolved. Certainly it would be inappropriate to require the structure to be reduced to 24 feet in height, or the balcony or the plumbing to be removed, if the resolution of the Supreme Court and the remanded issues could result in approval of the 34½ -foot height, approval of the balcony, or approval of the interior plumbing.

Accordingly, both Motions for Summary Judgment are DENIED at the present time. While we could determine now that Defendants were in violation for the period from which the taller structure was built to the dates on which the Town should have ruled on their applications for the amendment to the stream setback order and for the amendment to their 1998 permit for the taller structure, material facts are in dispute or legal or factual issues are on appeal as to all remaining issues regarding that period of violation or other periods of violation claimed by the town. Moreover, material facts remain in dispute as to the Town's requests for injunctive relief and

penalties, both as to Defendants' estoppel defense and as to the other factors to be considered in ruling on those requests.

We will hold a brief telephone conference on November 13, 2002, to discuss whether any preliminary injunctive relief should be entered by the Court, either on motion or by agreement of the parties; whether any testimony should be taken from Mr.Flagg or Mr. Peter Jackson; and whether this matter otherwise should be placed on inactive status pending the resolution of the Supreme Court appeal and the remand order in Docket No. 186-9-00 Vtec.

Done at Barre, Vermont, this 24th day of October, 2002.

_____
Merideth Wright
Environmental Judge

## Footnotes

**1** That decision ruled that neither a conditional use permit nor a 24 V.S.A. §4468-type of variance was required for the as-built construction. The Town has appealed the decision to the Supreme Court and Defendants (appellants in that appeal) have cross-appealed to the Supreme Court. Neither party requested an order under V.R.C.P. 54(b) that would have allowed the remanded issues to go forward before the ZBA while the other issues were appealed to the Supreme Court.

**2** One contested issue in the appeal was whether this watercourse qualified as a "stream" for the purposes of §V(9) of the Zoning Ordinance, because if it did not, then the stream setback regulation did not apply to this project and no reduction in the stream setback was necessary. The April 2002 decision and order ruled that it does qualify as a stream; that issue is on appeal to the Supreme Court.

**3** The Town's memoranda describe the structure as an 1800-square-foot structure as contrasted with the 900-square-foot structure as approved. This description is misleading. The structure was approved for a 900-square-foot footprint (30' x 30'), 24 feet in height, and 1½ stories going by the elevation drawing (although the number of stories was not stated either in the application or the approval, nor discussed in the minutes). The structure was built in the approved 900-square-foot footprint (30' x 30'), but was raised to 34½ feet and 2 full stories in height, with a balcony not shown in the approved drawings.

**4** The parties undoubtedly have evidence as to the date of this construction but it has not been supplied to the Court; it must have occurred some time in the summer or early fall of 1999, after the June 9, 1999 conversation and before the October 1999 application for the as-built permit.